BOLLIN v. HOOPER.

1. MECHANICS' LIENS — RIGHT TO SUE ON CONTRACT—SERVICE OF STATEMENT ON OWNER—WAIVER.

The failure of a building contractor to serve on the owner a sworn statement as to the amounts due for labor and material, required by 3 Comp. Laws, § 10718, as a prerequisite to the right to sue on the contract, is not fatal to the maintenance of an action, where it appears that the objection was not raised on a trial of the case in justice's court, that the statement was never demanded by the owner, and that all bills have in fact been paid.

2. SUNDAY CONTRACT—LIABILITY FOR BENEFITS.

Where one party to a Sunday contract performs his part of it on week days, and the other accepts what is done, he must pay for what he receives.

Error to Wayne; Hosmer, J. Submitted February 13, 1901. Decided July 2, 1901.

*Assumpsit* by John Bollin against Frederick B. Hooper for labor performed and material furnished in the construction of a building. From a judgment for plaintiff, defendant brings error. Affirmed.

*Barbour & Rexford*, for appellant.

*Oscar M. Springer*, for appellee.

MOORE, J. This suit was brought in justice's court, where plaintiff recovered a judgment. The case was appealed to the circuit court, where, after a trial by jury, plaintiff again recovered judgment. The case is brought here by writ of error.

In the spring of 1899 Mr. Hooper contracted with one Schneider to build him a two-story, brick-veneer dwelling-house upon a lot he owned in Detroit. Mr. Schneider contracted with the plaintiff to do the brick and mason work

for $885. On the 21st of April the plaintiff, in a letter addressed to the defendant, waived any claim to a lien on the building for his work. Mr. Bollin was paid by Mr. Schneider at one time $300, and the other time $100. The last payment is said by some of the witnesses to have been made on the 6th of May, and by the defendant on the 8th of May. It is the claim of plaintiff that differences arose between Mr. Schneider and Mr. Hooper, so that, the same day or the day after he was paid the $100, Mr. Schneider told him he was not going on with the contract, and that, if he did more work on the building, he must look to some one else for his pay. Mr. Grenier was the architect of the building. The plaintiff testified:

"I did not understand the effect of giving that release or waiving the lien at that time, but I was afterwards told that I could not assert any lien upon the job or upon the building. I afterwards had a talk with Mr. Grenier and Mr. Hooper. I was telling them, when they told me to go ahead on the job on Mr. Hooper's account, why I was asking for that release back; and I was told by Mr. Hooper, in the presence of Mr. Grenier, that that release would not be interfering with the further work. On May 10th (Thursday night) I had taken off my men, and told them not to come the next morning; and Mr. Hooper and myself had a talk. Mr. Hooper said I should go ahead with the job and finish it up, and he would see that I had— 'I will see that you get paid on that work.' And I told the men then— I says— Here are those two men that were there. The other one is not here as a witness. I told him to leave the tools right there, and come the next morning to work. That was Thursday. So that Thursday there was that man, two laborers, and myself, only, and the other ones came back on Friday again. On Friday there was about twelve men to work."

He also claims that substantially the same statement was made in the office of the architect on one Sunday.

One Meier was furnishing the stone to Mr. Bollin which was to go into the house. Mr. Bollin testified:

"Before Mr. Meier would furnish more stone to finish the work, he wanted to hear Mr. Hooper say that he would pay for the job,—before he would deliver the stone. Mr.

Meier then went with me to Mr. Hooper's office, and Mr. Hooper said that we should finish the job, and he would pay us for it; that he would see that we got paid for it."

It is his claim: That, relying upon these statements, he continued to work until he had substantially completed the job, when, on the 7th of June, Mr. Hooper served him with a writing containing, among other language, the following:

"You are hereby notified and informed that if you continue doing the brick and mason work on the dwelling-house now being erected for me on lot 61, north side of Delaware avenue, in this city, you will have to look to Emanuel Schneider, with whom you made the contract for said work, for your pay."

That he afterwards presented his bill to Mr. Hooper, who refused to pay it.

This suit was commenced June 20, 1899. Mr. Bollin produced several witnesses whose testimony tended to corroborate his about the agreement between him and the defendant.

The defendant denied that he ever promised to pay Bollin for his work, but says he assured him he would do what he could to see that he got his pay from Mr. Schneider. He also claims plaintiff was at work for Schneider, and that the claim that defendant was liable to him was an afterthought.

The testimony was very conflicting. The defendant presented 10 requests to charge. These requests were taken up *seriatim* by the circuit judge. Some of them were given literally, some of them were modified, and some were refused. There are a good many assignments of error, all of which have been considered, but we shall refer to only those which we deem to be important.

The court was asked to direct a verdict in favor of defendant "because, even if there were a valid contract between the parties, the plaintiff never served upon the defendant a statement under oath, as required by the me-

chanic's lien law;" counsel basing this claim upon section
4, Act No. 179, Pub. Acts 1891, and the case of Barnard
v. McLeod, 114 Mich. 73 (72 N. W. 24).

The record discloses that defendant appeared in justice's
court and pleaded the general issue, without giving any
notice thereunder. The trial judge charged the jury in
relation to this request as follows:

"The first thing we meet, gentlemen of the jury, on the
threshold of this case, is the failure of the plaintiff to file,
or before commencing the suit to give Mr. Hooper, an
affidavit stating that all the material bills have been paid,
and the wages of the masons and laborers who worked
under him have been paid. Now, gentlemen of the jury,
that, under the laws of our State, is a thing that might be
demanded; but, in a comparatively recent case before our
Supreme Court, the Supreme Court said it is not abso-
lutely jurisdictional, and that, where it is obvious that all
material and labor has been paid for, then and under
those circumstances a suit may be maintained. Now, I
cannot put myself exactly in the position of Justice
Lemkie, but there is evidence here that it was obvious to
him that these several bills had been paid, and therefore
the affidavit was not jurisdictional; and, if there was evi-
dence, it was a matter for him to determine, and not for
you and me. Now, when we come here, gentlemen of
the jury, there is evidence before us that I think, at the
present stage, at least, is conclusive— They have brought
before you at the present time the evidence of the register
of deeds' office, which shows that no liens have been filed
upon the property, although the work has been completed,
and more, I think, than the statutory time for the filing of
liens has passed; and they have introduced the testimony
of Mr. Bollin and others, tending to show that all have
been paid; and so, so far as that purely technical point is
concerned, gentlemen of the jury, I think that they are
properly in court, and that I can submit the case to you
freed from any technicality of that description."

The record discloses that the bills had all been paid.
Defendant never made a demand for the statement. He
did not question the jurisdiction of the court below. Un-
der the facts disclosed by the record, we think the trial
judge properly disposed of the question. See Barnard v.
McLeod, 114 Mich. 73 (72 N. W. 24).

It is said the court erred in refusing to direct the jury, in effect, that if they found a contract was made on Sunday, May 21st, it is void; counsel citing *Aspell* v. *Hosbein*, 98 Mich. 117 (57 N. W. 27). The court gave the request as prepared by counsel, but he also explained to them, if one party to a Sunday contract performed his part of it upon week days, and the other party accepted what was done, the other party could not accept the benefit of what was done without paying for it; giving a number of illustrations. What the learned judge said upon the subject was not prejudicial to the defendant. The case was carefully tried. The different theories of the parties were properly submitted to the jury.

Judgment is affirmed.

The other Justices concurred.