ADAMS *v.* CENTRAL CITY GRANITE BRICK & BLOCK CO.

1. MECHANICS' LIENS—LAND AFFECTED—STATUTE—CONSTRUCTION.
   The lien created in favor of mechanics and materialmen by section 10710, 3 Comp. Laws, as amended (Act No. 17, Pub. Acts 1903), upon the "lot or lots" upon which the improvement is made, while limited to the surveyed lots, in conformity with which the plat is made, is not limited to the particular lots upon which the improvement stands, but, in case of a factory, may extend to the entire property, as a city block, selected as a proper site for, and devoted to the use of, the factory and its material and products.

2. SAME—EXTENT OF LIEN.
   It is the general rule that the lien attaches to the extent of the statutory limit, and the lien claimant need aver and prove no more than that the quantity of land on which he claims a lien is within that limit; if for any reason the owner seeks to have a smaller quantity of land held subject to the lien, it is for him to present the reason and the facts supporting it, and if the claimant seeks an apparent enlargement of the lien, he must, by proper averments and proofs, show himself entitled to it.

3. SAME—EVIDENCE—SUFFICIENCY.

On a bill to enforce a mechanics' lien upon a factory and several blocks of land, upon one of which the building was situated, evidence examined, and *held,* to support a decree establishing the lien upon those contiguous lots upon some portion of each of which the structure rested, but not to support a lien upon the remainder of the land, though covered with a deposit of material valuable for the manufacturing purpose for which the factory was erected.

4. SAME—EVIDENCE—EFFECT.

Testimony that before the lienor delivered the material for which the lien is claimed he raised some question as to how he would be paid, and that a representative of the debtor corporation told him the company owned 90 or 92 lots surrounding the factory that ought to satisfy any demand growing out of the erection of such a building, does not indicate any attempt by the parties to fix by contract or otherwise the quantity of land which should be subject to the lien.

5. SAME—MORTGAGES—PRIORITY OVER LIEN — LIEN STATEMENT — FAILURE TO FILE—WAIVER.

A lien claimant who has paid for all labor and materials used by him, and who before filing his lien agreed with the landowner as to the balance due him, but who has not complied with section 10713, 3 Comp. Laws, as to making the statement of amounts due to laborers and materialmen, is not preferred over a mortgagee taking a mortgage between the completion of the building and the filing of the lien, since the owner could not bind the mortgagee by a waiver of noncompliance with the statute.

Appeal from Jackson; Parkinson, J. Submitted June 18, 1908. (Docket No. 73.) Decided October 5, 1908.

Bill by Henry J. Adams against the Central City Granite Brick & Block Company, Otis C. Johnson, executor of the last will and testament of Lucy W. S. Morgan, deceased, the Lake–Ulricksen Company, and Marion A. Dayton to enforce a mechanics' lien. From a decree for complainant, defendant Johnson appeals. Modified, and affirmed as to complainant, and reversed as to defendant Dayton.

*Richard Price*, for complainant.

*Wilson & Cobb*, for defendant Lake–Ulricksen Co.

*John F. Henigan*, for defendant Dayton.

*Arthur Brown* (*Edson R. Sunderland*, of counsel), for defendant Johnson.

The materials and labor for the value of which liens are claimed entered into the construction of a factory building in Jackson Mound addition to the city of Jackson. The plat is shown by the accompanying diagram.

The lots are 66 feet wide. The debtor corporation acquired its property after the plat had been made and recorded and by the platted descriptions, including, however, the streets and alleys. Some work had then, and has since, been done upon the streets, but not by the city, and the plat had never been accepted by public authority. The property was assessed by the city in accordance with the plat. The building, the only one upon the land described in the decree, is 180 feet long and 49 feet wide, and rests upon lots 7, 8, and 9, and possibly on a few feet of lot 6, in block 14. The debtor corporation was organized to manufacture and sell brick, blocks, tile, and posts. It has never engaged in the business. Its capital is $35,000, of which $32,000 was contributed, as appears by the articles of association, in the following property:

"Lots five (5), six (6), seven (7), eight (8), nine (9), ten (10) and eleven (11), block six (6); lots six (6), seven (7), eight (8) and nine (9), block seven (7); lots four (4), five (5), six (6), seven (7), eight (8), nine (9), ten (10), eleven (11), twelve (12) and thirteen (13), block eight (8); block thirteen (13), except lots one (1) and nine (9); block fourteen (14); block fifteen (15) and block sixteen (16), of Jackson Mound addition to the city of Jackson; including all rights to alleys and streets, passing through or along said real estate."

Upon block 14 and extending to block 6 is a mound containing material—sand and gravel—supposed to be suitable and valuable for the products proposed to be turned out by the factory. Upon other lots and blocks is similar material, lying, at certain points, some distance below the surface of the ground. The mound or knoll had been examined and tested. It was estimated that $50,000 worth of the material, at 10 cents a load, lay on blocks 14 and 6, above street grade. The lots, for the purpose of dwellings, are worth about $200 each. Some of them were sold by the corporation. The lienors claimed, and the court below gave them, a lien upon the building and upon other of the property, described in the decree as

"Lots four (4), five (5), six (6), seven (7), eight (8), nine (9), ten (10), and eleven (11), in block six (6); lots six (6), seven (7), eight (8), nine (9), ten (10), eleven (11), twelve (12), and thirteen (13), in block eight; lots two (2), three (3), fourteen (14), fifteen (15), sixteen (16), seventeen (17), and eighteen (18), in block thirteen; lots one (1), two (2), three (3), four (4), five (5), six (6), seven (7), eight (8), nine (9), fifteen (15), sixteen (16), seventeen (17), and eighteen (18), in block fourteen; lots one (1), two (2), three (3), four (4), five (5), six (6), seven (7), twelve (12), thirteen (13), fourteen (14), fifteen (15), sixteen (16), seventeen (17), and eighteen (18), in block fifteen (15); lots one (1), two (2), three (3), four (4), five (5), six (6), sixteen (16), seventeen (17), and eighteen (18), in block sixteen (16)."

The bill was taken as confessed by the debtor corporation. The contestant and appellant is mortgagee of the premises covered by the decree. The amount of the liens, with costs, is more than $1,500. The principal contention, with some of the reasons advanced by the trial court for granting the decree, is indicated by the following quotations from the opinion:

"There is a peculiar question in this case, a new one in Michigan, I think. The land upon which the building was placed, upon which a mechanic's lien is claimed, and for the foreclosure of which the bill was filed, has been platted. It embraces a large number of lots owned by the defendant company. After it was platted, the defendant company found that the sand, which lay to a considerable depth on a large number of these lots was available, in its opinion, for the manufacture of brick of a certain kind. It undertook to establish its factory upon the land to utilize this material in the manufacture of this brick. It intended to take all of the material on these lots that was fit for this use and subject it to such use, which might require a large number of years. As it has been spoken of in the case, they thought it would not be used up in the lifetime of any of them then entering into the company.

"Now it is insisted here that the lien cannot extend any further than the very ground on which the factory was built, because they say the statute limits to the lot or ground in front or around the lot which goes with it. Yet complainant says that the factory, which occupied, if two lots, not more than two, would not be of any particular use,

except as the raw material lying upon a large number of the other lots could go with it.

"In order to hold with counsel for complainant, it is necessary for the court to possibly enter a new field, and make a decision without precedent in Michigan, although the principle contended for by complainant's counsel has been recognized, and is recognized, in the text-books on Mechanics' Liens.

"It may be said to be true by platting this land it was separated into lots, and not more than a lot should go with the building upon it, and if this were a dwelling house, that argument would be unanswerable. But it was after this land was platted that the defendant company acquired it. And the defendant did not contemplate the immediate use of that portion of the land upon which this sand lay for use as city lots, but had intended to take off the sand, and then the lots would remain after the sand was exhausted. And it would be true the factory of itself would be of no use except as they had raw material to keep it running. So it seems to me that, as to that part of the property upon which this sand lay, the owners themselves practically ignored the division into lots and blocks.

"It is true they went on and improved some of the streets in part, but they may not have deprived them of the right to take the sand suitable for manufacturing purposes from the streets and reduce their grade, as they reduced the grade of the lots, by taking off this material.

"But there are some of these lots that were not available for use in connection with the factory. The company contemplated they would take their manufactured brick and build houses on these lots, and sell them, and then perhaps, as a lot was graded down by exhausting the sand upon it, it would build upon that and sell.

"I find difficulty in determining whether the lien ought to extend, not only to the factory and the ground occupied by it, but to these lots upon which the sand existed, or whether simply to the sand itself, the material fit for manufacturing, and then leave the lots. The proposition is a new one. There might be a difference in extending a lien to the lots, or extending them to the material fit for manufacturing purposes that is upon the lots. There may be separate interests in land. One man may own the timber, and another one may own the surface for farming purposes. Another one may own a strata of

coal 100 feet below the surface, and below that there may be a strata of something else that somebody else may own.

"I feel confident that the parties, in establishing the factory there, meant that all the material fit for use in the factory should go with it as part of its property; and, in building the factory, I think the lien of the man who furnishes the labor and material should extend, not only to the building, but to everything that became part of that entity, and which was treated as an entity. Otherwise, assuming that this material is valuable for the purposes intended, I would give a lien simply on the building, and then without the material to use in manufacturing the building would be comparatively worthless. Somebody else could acquire the material and put up another factory. I don't think that result ought to be reached."

The decree establishes the lien upon lots, as distinguished from the material upon or in the lots. The further contention is made that the lien of Marion A. Dayton is not established, for the reason that he did not serve, upon the owner of the property, the statement required by 3 Comp. Laws, § 10713.

OSTRANDER, J. (*after stating the facts*). The statute provides for a lien—

"Upon such house, building, machinery, wharf, * * * and other structure, and its appurtenances, and also upon the entire interest of such owner, * * * in and to the lot or piece of land, not exceeding one-quarter section of land, or if in any incorporated city or village, not exceeding the lot or lots upon or around or in front of which such improvement is made. * * *" Act No. 17, Pub. Acts 1903, amending 3 Comp. Laws, § 10710

The theory of the bill, as disclosed by the allegations therein, is that the building is an improvement to or on all of the land mentioned in the decree, and is advanced, not by statement of facts showing the relation between the factory and the land, but by the broad averment that it constitutes "a valuable and permanent improvement on the same." The statute limits the area of the land to which the statutory mortgage attaches to the lot or piece

of land upon which the building or other structure is erected. And in no event can the quantity exceed 160 acres of land in the country, or the lot or lots upon which the improvement is made if in an incorporated city. The use of the words "lot or piece of land" in one portion of the law, and the use of the words "lot or lots" thereafter, with reference to property within a city, requires us to hold that the words, where last employed, mean the surveyed lots, in conformity with which the plat is made. And as without this second limitation it might be a question of fact whether the lien should attach to a larger or smaller piece of land, so with the limitation by acres, and by surveyed lots, it may be a question of fact whether the lien shall attach to all or a part only of the land within the maximum quantity fixed by the law. It would not necessarily follow, because a structure had been erected upon some part of a farm of 160 acres, that the lien extended to 160 acres. And it does not necessarily follow, because a block in a city is divided into lots, that a lien may not attach to more of those lots than are covered, or partly covered, by the structure erected. A factory building, though built upon and covering only two platted lots in a city block, may be said to be built upon contiguous territory in the block necessary to the convenient enjoyment and use of the buildings. Assuming an entire block to have been selected as a proper site for, and devoted to the use of, a factory and its material and products, it would be a narrow construction of this statute which would, in all cases, limit the lien to the particular lots upon which a particular building stood. See, generally, 2 Jones on Liens (2d Ed.), chap. 34, and notes; Boisot on Mechanics' Liens, chap. 8; 27 Cyc. p. 221 et seq. As to construction of the statute, see *Smalley* v. *Terra-Cotta Co.*, 113 Mich. 141, 148.

It is the general rule that the lien attaches to the extent of the statutory limit, and the lien claimant need aver and prove no more than that the quantity of land on which he claims a lien is within that limit. If for any

reason the owner seeks to have a smaller quantity of land held subject to the lien, it is for him to present the reason and the facts supporting it. But if the claimant, as in this case, seeks an apparent enlargement of the statute quantity of land, he should, by averment and proofs, advance reasons and facts in support of his demand. It is clear that a lien extending to the building and to lots 6, 7, 8, and 9, block 14, may be sustained. No reason appears for limiting the quantity of land to less than the area of these surveyed, contiguous lots, upon some portions of each of which the structure rests. Such a lien is supported by the facts and by the express language of the statute. No facts supporting a decree enlarging this area are set out in the bill. The decree recites that the court finds "that the premises upon which such building was constructed, and upon which it constituted an improvement, is described," etc. The building is not, in fact, an improvement of all of the land containing the deposit of material supposed to be valuable for manufacturing purposes. It would be quite as much an improvement, except to the land on which it rests, if it were erected outside of the addition. No criticism being made of the bill, and no objections, based upon the lack of averments, to the introduction of testimony appearing, we have examined the testimony. We find no testimony supporting the conclusion that the building is "constructed" upon the land described in the decree. The learned trial court correctly stated that the building was erected for the purpose of utilizing the deposit found upon some of the land. At the best, this would devote the deposit, separate from the land, to manufacturing purposes. There is no testimony tending to prove that the lots, as distinguished from the deposit of material, were ever treated as any part of the manufacturing plant. Indeed, the contrary appears. It was intended, so far as intention appears, to sell the lots after removing the deposit to a desired level. There is some testimony tending to prove that certain lots, the location

and descriptions of which we cannot ascertain, were convenient, and will be necessary, for storing manufactured products.  We do not understand that any such lots are included in the decree.  The testimony is too indefinite to warrant us in finding that any particular lots, other than those already described, were treated as a part of the lot or piece of ground upon which the building was constructed.  Testimony was introduced tending to prove that the lienor Adams, before delivering lumber for the building, raised some question about how he would be paid, and a representative of the debtor corporation told him that the scheme would undoubtedly be a success; and, if it was not, there were 91 or 92 lots owned by the company that ought to satisfy any demand there would be growing out of the erection of such a building.  We are not called upon to determine whether, and, if at all, in what manner, the statutory limits of a mechanic's lien may be extended by contract.  We find nothing in the testimony which indicates any attempt of the parties to fix, by contract or otherwise, the quantity of land to which a lien should extend.  We conclude that the statute and the facts require a modification of the decree, and that the lien extends to the building and to lots 6, 7, 8, and 9, block 14, only.

The bill was filed by claimant Adams, and claimant Dayton is made a defendant.  Claimant Dayton contracted with the owner to do the carpenter work and to also furnish certain materials.  Performance called for expenditure of labor, and he employed men to do the necessary work.  He furnished labor and materials besides those required by his original contract.  In his answer he avers that he furnished services, labor, and material for building the structure in question, for which he has not received his pay; that he duly filed a statement claiming a lien upon the premises; has instituted no proceedings at law to recover the amount due him.  These facts are proven.  He asserts that each of the parties claiming a lien should share pro rata in the proceeds of any sale of

property ordered by the court, and that said lienors should be preferred to any and all other holders or liens and incumbrances upon the property. After the building was erected, and before this claimant had filed notice of his lien, the owners mortgaged the property in question, and other property, to the appellant. Dayton did not, at any time, render to the owner a statement under oath of the number and names of laborers in his employ and of every person furnishing materials. He was paid, from time to time, sums of money, the total of which nearly equals the original contract price. His contention here is ruled against him by *Kerr-Murray Manfg. Co.* v. *Power Co.*, 124 Mich. 111, unless it can be said that, because Dayton paid his men weekly, and had paid for all material furnished for the building, and because he had, before filing a lien, agreed with the owner upon the balance due him remaining unpaid, the case is to be distinguished from the one referred to, and is ruled by *Walker* v. *Syms*, 118 Mich. 183, and *Bollin* v. *Hooper*, 127 Mich. 287. Claimant is here asserting, not merely a demand against his debtor, but a lien upon real estate in which others besides the owner claim an interest as lienors. *Wiltsie* v. *Harvey*, 114 Mich. 131. The owner could not waive compliance with the statute so as to bind the mortgagee, appellant. *Dittmer* v. *Bath*, 117 Mich. 571. The case is not within the rule, or exception, of *Walker* v. *Syms*, or of *Bollin* v. *Hooper*.

The decree in favor of claimant Dayton is reversed, and a decree will be entered in this court in accordance with this opinion, and the record and cause remanded to the circuit court for further proceedings. Appellant will recover costs of this appeal from complainant, and from his co-defendants.

MONTGOMERY, HOOKER, MOORE, and MCALVAY, JJ., concurred.