UTAH IMPLEMENT-VEHICLE CO. v. BOWMAN et al.

(District Court, D. Idaho, E. D. November 18, 1913.)

1. MECHANICS' LIENS (§ 5*)—STATUTES—CONSTRUCTION.

A mechanic's lien is entirely the creature of the statutory law of the state, which must be construed liberally with a view to effecting its object and doing substantial justice, without adding to or subtracting therefrom.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 3, 5; Dec. Dig. § 5.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MECHANICS' LIENS (§ 260*)—ENFORCEMENT—JUDGMENT—STATUTES—CONSTRUCTION—MORTGAGES.

Rev. Codes Idaho, § 5118, provides that no mechanic's lien shall bind any property, etc., for a longer period than six months after the claim has been filed, unless proceedings are commenced in a proper court within that time to enforce the lien, or, if security is given, then six months after the expiration of the credit, but no lien shall continue in force for a longer time than two years unless proceedings to enforce the same shall have been commenced. *Held,* that such section should be construed as though it provided that the lien should not continue unless proceedings were commenced in a proper court "against the person or persons against whose interest the lien is asserted," and hence, where a mortgagee of property was not made a party to a suit to enforce a mechanic's lien, he was not bound by the judgment, nor was the lien after the expiration of the statutory period of any effect as against the mortgagee's interest.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 456, 458–468; Dec. Dig. § 260.*]

3. REFORMATION OF INSTRUMENTS (§ 50*)—ATTORNEY'S FEES.

Where plaintiff sued for the reformation of a mortgage and to foreclose the same, he could not recover attorney's fees for the reformation, but only for services in connection with the foreclosure.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. § 201; Dec. Dig. § 50.*]

In Equity. Suit by the Utah Implement-Vehicle Company against Frank C. Bowman, as trustee in bankruptcy of the estate of N. C. Mickelson, bankrupt, and certain others. Decree for complainant.

St. Clair & St. Clair, of Idaho Falls, Idaho, for plaintiff.

O. E. McCutcheon, of Idaho Falls, Idaho, for defendant Bowman.

William A. Lee and John W. Jones, both of Blackfoot, Idaho, for defendant D. W. Standrod & Co.

DIETRICH, District Judge. A very brief statement of the facts will suffice to make clear the nature of the single question which has been argued and submitted for decision. The suit is brought to foreclose a mortgage given to the plaintiff by N. C. Mickelson on the 6th day of February, 1911, to secure the payment of a promissory note of the same date for $12,575.75, which mortgage was, on February 21, 1911, recorded in the office of the county recorder of Bingham county, Idaho, where the property is situate. Mickelson later became a bankrupt, and his trustee is made a party defendant. The other defendant, D. W. Standrod & Co., a corporation, is the trustee for the Idaho Lumber Company and others, who claim liens upon or equitable interests in the mortgaged property. It is unnecessary to explain the nature of this trust further than to say that the interests of all beneficiaries thereof save one originated in mechanics' liens for services rendered and materials furnished in the construction of a building upon a portion of the mortgaged premises. The original validity of these liens is not now called into question, and for the purposes of the decision it is assumed that in due time the several parties filed their claims of lien in the form prescribed by law, and that within the statutory period they commenced proceedings in the proper state district court to enforce the liens, and that such suits were consolidated, and later a de-

cree was entered adjudging the several claims to be liens upon the property of the mortgagor, and that thereafter the property was duly sold to satisfy the amounts adjudged to be due, at which sale Standrod & Company became the purchaser, as trustee for all concerned. It is further assumed that, while some of these claims were filed with the recorder shortly before and some shortly after the execution and recording of the plaintiff's mortgage, by relation the liens may have all antedated the lien of the mortgage. Although its mortgage was of public record when they were commenced, the mortgagee, the plaintiff here, was not made a party to the lien suits, and its contention now is that therefore not only is it not bound by such foreclosure proceedings, but also that through lapse of time the liens have been lost, and as to it they are no longer of any validity. The precise question therefore is whether or not a lien claimant under the mechanics' lien law of Idaho loses his priority of lien as against a junior mortgagee, by foreclosing his lien without bringing in and making a party to such foreclosure suit the mortgagee, the period provided by the statute in which proceedings may be commenced for the enforcement of the lien, expiring during the pendency of the suit.

[1] A mechanic's lien is wholly the creature of statute, and therefore the question must be referred to the statutory law of the state. In construing such statutes two principles are to be borne in mind: Upon the one hand, they are to be construed liberally, with a view to effecting their object and doing substantial justice; and, upon the other hand, we must take them as we find them. The question of policy is one exclusively for the Legislature, and it is our function only to ascertain, if possible, the intent of the statutes, and then administer them in such a manner as to give effect thereto.

[2] Section 5110 of the Idaho Revised Codes provides generally that every person performing labor upon, or furnishing materials to be used in, the construction of a building, has a lien upon the same for the work done or materials furnished. Section 5114 provides that such liens are preferred to other incumbrances attaching subsequent to the time when the building was commenced or the work done or materials furnished. Section 5115 requires that any person claiming a lien shall, within the period therein prescribed, file his verified claim therefor, containing certain statements of fact, in the office of the county recorder of the county in which the property is situated. Section 5118 is as follows:

"No lien provided for in this chapter binds any building, mining claim, improvement or structure for a longer period than six months after the claim has been filed, unless proceedings be commenced in a proper court within that time to enforce such lien; or, if a credit be given, then six months after the expiration of such credit; but no lien shall continue in force under this chapter for a longer period than two years from the time the work is completed, or credit given, unless proceedings to enforce the same shall have been commenced."

Section 5124 provides that the general rules of civil procedure prescribed by the Code shall apply in proceedings to foreclose liens. No other provisions are thought to have any material relation to the ques-

tion under consideration, and it is apparent that, of those referred to, section 5118, which is set out in full, is of primary importance.

Admittedly, if no action at all is commenced within the period therein named, the lien lapses and absolutely ceases to exist as to all the world. The contention of the defendant, however, is that, under this section, "proceedings" are "commenced" when a suit to foreclose the lien is brought by the lienor against the owner of the property upon which the lien is claimed. The reasoning is that, in a suit of foreclosure of a mortgage or of a mechanic's lien, the owner of the title to the property is the only indispensable party, and that, while others may be proper parties, their presence is not essential to the validity of the decree which may be entered therein. It is doubtless true that the owner of the property is the only indispensable party to such suit, and in a case where he is the sole defendant the decree is not void; it is effective to the extent of cutting off his rights and estate, and doubtless a deed issued to a purchaser upon a proper sale had under the provisions of such decree operates to transfer his title to the purchaser. But, upon the other hand, it is also undoubtedly the case that incumbrancers who are not made parties to such suit are in no wise affected by the decree, and their liens remain unimpaired. If not entirely aside from the point, therefore, it is certainly not conclusive of the question under consideration to say that the decree entered in the consolidated case in the state court, foreclosing the liens of the several claimants, is valid. Likewise a decree would be valid if the suit were prosecuted against but one of several part owners of the property; but in such case what would be the status of the lien as touching the interests of the other part owners? So the plaintiff here, conceding that the decree in the former suit is conclusive upon the parties thereto, contends only that it is in no wise bound thereby, and that, the time having long since elapsed for foreclosing the liens against it, they have therefore ceased to exist, so far as its interest is concerned. And it must be conceded that its rights were not, and could not be, affected by a suit to which it was not a party. The record in that case cannot operate even as prima facie evidence against it. If it were assumed that the lien claimants are not prejudiced by the lapse of time, still they could not now bring forward the decree as the measure or evidence of their rights, but as against the plaintiff they would be compelled to make proof de novo in support of their claims, the same as if such decree had never been entered. Hassall v. Wilcox, 130 U. S. 493, 9 Sup. Ct. 590, 32 L. Ed. 1001. And it follows that no proceedings were ever commenced to enforce the liens against the interest of this plaintiff.

The real question, therefore, is whether or not the commencement of a proceeding against one party in interest operates to keep alive the lien as to all parties in interest. It will be observed that section 5118 does not purport in terms to prescribe who shall be made parties to the suit, either plaintiff or defendant, and in giving to it a practical construction it is necessary to interpolate a designation or description of the parties. Defendant would make the clause, "unless proceedings be commenced in a proper court," etc., read, "unless pro-

ceedings be commenced in a proper court against the owner of the property," etc., whereas the plaintiff would have it read, "unless proceedings be commenced in a proper court against the person or persons against whose interests the lien is asserted," etc. After the most earnest consideration, I cannot escape the conclusion that this latter view is in substantial accord with the true intent of the Legislature. No lien, it is provided, shall bind the property for a period of more than six months, "unless proceedings be commenced in a proper court within that time to enforce such lien." But proceedings to enforce the lien against what and against whom? The natural answer is, the lien against the right or interest of any one against whose right or interest the lien is claimed or asserted. The proceeding is one to foreclose a right, an estate, an interest, and it should be instituted against all those whose rights, estates, or interests are claimed to be subordinate, and which may therefore be subject to foreclosure. Surely it is not sufficient merely to bring in such parties as will enable the plaintiff to procure some sort of valid decree. As already suggested, a suit by the claimant against one of several co-owners of the property might result in a valid decree; it would establish the lien as against the estate of such defendant, and the ensuing sale would effectually foreclose his right. But by no one, as I understand, is it contended that such a proceeding would operate to keep alive the lien upon the interests of other part owners. If, then, such an interest remains unaffected thereby, why should an exception be made in the case of· a mortgagee or the holder of an estate or interest of a different character? The proceeding is to be commenced to enforce the lien, not against a single specified estate or interest, but against any estate, interest, or right which the lienor claims to be adverse and subordinate to his lien, and therefore subject to foreclosure, and the privilege of commencing a proceeding for such a purpose—that is, for any foreclosure or the foreclosure of any right or interest—is, as to such right, interest, or estate, limited to the specified period.

If now we turn from an analysis of the text to a consideration of the reasons for enacting the provision and the objects to be effected thereby, we are impelled to the same conclusion. We must assume that the Legislature acted neither arbitrarily nor capriciously; but, upon the other hand, the reasons must have seemed to it cogent for requiring suit to be commenced in so short a time. Manifestly, the principal, if not the only, purpose of such a limitation, could have been to require that the amount and dignity of the lien be judicially ascertained and established while the transaction out of which it arises is ·sufficiently recent to render the facts reasonably accessible to all parties concerned. Any dispute touching the amount of the claim, the date of its origin, or the time to which the lien relates, is thus to be conclusively settled while the facts are still fresh and the witnesses are available. Now it cannot be doubted that it is often quite as important to an incumbrancer, who is a stranger to the transactions upon which the claim of lien is based, to have the benefit of this protection, as to the owner himself, who is in a better position to know the facts and to preserve the evidence thereof. Dis-

putes not infrequently arise between mortgagees and lien claimants touching the priority of their respective liens, and inasmuch as the facts establishing the date as of which the mechanic's lien attaches, often rest entirely in parol, and can therefore easily be colored or perverted, it is important that the issue be promptly determined. If we give place to the view urged by the defendant, it could very well happen that after the lapse of years a mortgagor would for the first time learn or have reason to suspect that a title originating in the foreclosure of a mechanic's lien was claimed to be superior to the lien of his mortgage. Not having been made party to the suit, his natural presumption would be that the priority of his mortgage is conceded, and there would be nothing in the transfer of title or change of possession to put him upon his guard.

The argument that the limitation does not apply to a mortgage, because the validity and amount of a mechanic's lien may be established in a suit between the claimant and the owner of the property alone, and that the only issue in which the mortgagee is interested, namely, the date or relative dignity of the lien, may be tried out in a subsequent suit to redeem, in so far as it has any force at all, rests upon an erroneous assumption, which is that the mortgagee has no right to question the amount or validity of the claim of lien. These are issues which the incumbrancer equally with the owner may raise, and for that purpose the mortgagee is entitled to his day in court. If, for instance, a lien were asserted for the value of material which was never furnished for use in a structure covered by the mortgage, it must be clear that the mortgagee may, by showing the fact, defeat the lien or reduce the amount thereof. As was pertinently said in Davis v. Bartz, 65 Wash. 395, 118 Pac. 334:

"A mortgagee has something more than a mere right to redeem as against an antecedent lien. He has a right to contest its validity or assail its priority, if the evidence warrants either defense. He is entitled to his day in court upon these matters within the period fixed by the statute."

See, also, Hassall v. Wilcox, 130 U. S. 493, 9 Sup. Ct. 590, 32 L. Ed. 1001; Davis v. Alvord, 94 U. S. 545, 24 L. Ed. 283; Brown v. Cornwell, 108 Va. 129, 60 S. E. 623; Eastmore v. Brinkler, 113 Ga. 637, 39 S. E. 105; Adams v. Central City Granite Co., 154 Mich. 448, 117 N. W. 932, 129 Am. St. Rep. 484; Federal Trust Co. v. Guigues, 76 N. J. Eq. 495, 74 Atl. 652.

Without prolonging the discussion, it is to be added only that upon the principal question the decided cases are not entirely in unison. Of those cited for the defendant, De La Vergue Refrigerating Co. v. Montgomery Brewing Co., 57 Fed. 111, 6 C. C. A. 272, and Monk v. Exposition, etc., Co., 111 Va. 121, 68 S. E. 280, it may be conceded, strongly tend to support its position. In Cornell v. Conine-Eaton Lumber Co., 9 Colo. App. 225, 47 Pac. 912, it is made clear that the conclusion reached was the result largely, if not entirely, of the emphasis placed upon a provision of the statute not found in the Idaho law. In the others, namely, Whitney v. Higgins, 10 Cal. 547, 70 Am. Dec. 748, Gamble v. Voll, 15 Cal. 507, and Gaines v. Childers, 38 Or. 200, 63 Pac. 487, while certain language is used favorable to the defense,

the precise question was not involved, and they are, to say the least, not directly in point. Furthermore, it is to be added, the construction which the defendant places upon the two California cases seems to be out of harmony with the more recent decision in Frates v. Sears, 144 Cal. 246, 77 Pac. 905, where the court cites with apparent approval Falconer v. Cochran, 68 Minn. 405, 71 N. W. 386, which unquestionably supports the plaintiff's contention here.

Upon the other hand, it is thought that the conclusion we have reached has the unequivocal sanction of the following cases: Davis v. Bartz, 65 Wash. 395, 118 Pac. 334; Deming-Colborn, etc., v. Union Nat., etc., 151 Ind. 463, 51 N. E. 936; Union Nat., etc., v. Helberg, 152 Ind. 139, 51 N. E. 916; Stoermer v. People's Savings Bank, 152 Ind. 104, 52 N. E. 606; Green v. Sanford, 34 Neb. 363, 51 N. W. 967; Ballard v. Thompson, 40 Neb. 529, 58 N. W. 1133; Smith v. Hurd, 50 Minn. 503, 52 N. W. 922, 36 Am. St. Rep. 661; Hokanson v. Gunderson, 54 Minn. 499, 56 N. W. 172, 40 Am. St. Rep. 354; Falconer v. Cochran, 68 Minn. 405, 71 N. W. 386; Dunphy v. Riddle, 86 Ill. 22; Crowl v. Nagle, 86 Ill. 437; McGraw v. Bayard, 96 Ill. 146; Jaicks v. Sullivan, 128 Mo. 177, 30 S. W. 890; Badger L. Co. v. Staley, 141 Mo. App. 295, 125 S. W. 779. I refrain from collocating other cases, cited as indirectly tending to the same result.

[3] There is, as I understand, no controversy over the amount due upon the Rodgers mortgage, including principal, interest, taxes paid, and attorney's fees; the last item being, according to agreement, $300. Nor is there any controversy as to the amount of principal and interest due upon the plaintiff's mortgage. No evidence was introduced touching the amount of attorney's fee to be allowed plaintiff, but in the complaint it is alleged that $1,200 is a reasonable fee, and in the answer it is denied that anything in excess of $800 would be reasonable, and at the hearing counsel for the plaintiff stated that they would not contend for an amount in excess of $800. Assuming therefore that the services of counsel rendered in, and in connection with, the suit, are of the reasonable value of $800, for which the plaintiff is liable to its attorneys, it appears that part of these services have to do with the reformation of the mortgage, which contained an erroneous description, and the other part with the foreclosure strictly speaking. It is apparent, I think, that the plaintiff cannot recover attorney's fees expended for the purpose of reforming the mortgage. I have therefore concluded to allow $600 for the services in connection with the foreclosure.

Counsel for the plaintiff are directed to prepare decree and to submit the same to opposing counsel before sending it to me for signature.