# HASSALL *v.* WILCOX.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 68. Argued April 2, 3, 1889. — Decided April 22, 1889.

A statute of Texas, passed in 1879, gave a lien for wages to mechanics and laborers, on a railroad, prior to all other liens, and authorized its enforcement, in a suit, by a judgment for the sale of the railroad, and provided that it should not be necessary to make other lien-holders defendants, but that they might intervene and become parties. It did not provide for any notice by publication. In 1882, a railroad in Texas was mortgaged to secure bonds. In 1884, a creditor of the railroad company holding such labor claims, in a suit against it alone, in a court of the State, obtained a judgment for his claim and lien, and for the sale of the railroad. In a suit afterwards brought by a bondholder, in the Circuit Court of the United States, to have the rights of the creditors of the company ascertained, and a receiver appointed, it was referred to a master to report on the priority of claims. The creditor by judgment presented his claim; it was objected to by the bondholder as fraudulent and embracing amounts not covered by the statutory lien. The master reported that the claim included amounts which were not a lien, as well as amounts which were, but did not separate them; that the claim was a valid one against the company, but that it was not a lien entitled to priority. The

court, on exceptions, awarded priority of lien to the claim, for the full amount of the judgment: *Held*,

(1) The bondholders were not bound by the judgment rendered in a suit to which they were not made parties;

(2) As the claims of the creditor originated after the mortgage was made, he was bound to prove affirmatively, before the master, the existence and priority of his lien;

(3) The evidence before the master did not sustain the lien for the whole amount;

(4) The proceeding in the state court could not be sustained as one *in rem*, because the adverse claimants did not have even constructive notice of it;

(5) The claim was founded wholly on the statute of Texas;

(6) It was proper that the claim should be reëxamined before a master.

THE case is stated in the opinion of the court.

*Mr. Silas W. Pettit*, for appellant, cited: *Hassall* v. *Wilcox*, 115 U. S. 598; *Fosdick* v. *Schall*, 99 U. S. 235; *Brooks* v. *Railway Company*, 101 U. S. 443.

*Mr. W. Hallett Phillips*, for appellee, cited: *Hassall* v. *Wilcox*, 115 U. S. 599; *Fosdick* v. *Schall*, 99 U. S. 235; *Jeffrey* v. *Moran*, 101 U. S. 285; *Union Trust Co.* v. *Souther*, 107 U. S. 591; *Union Trust Co.* v. *Walker*, 107 U. S. 596; *Burnham* v. *Bowen*, 111 U. S. 776; *Union Trust Co.* v. *Morrison*, 125 U. S. 591, 607.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

On the 18th of February, 1879, an act was passed by the State of Texas, (General Laws of 1879, c. 12,) entitled "An act to protect mechanics, laborers and operatives on railroads against the failure of owners, contractors and sub-contractors or agents to pay their wages when due, and provide a lien for such wages," which provided as follows:

"SECTION 1. *Be it enacted by the Legislature of the State of Texas*, That all mechanics, laborers and operatives who may have performed labor in the construction or repair of any railroad, locomotive, car, or other equipment to a railroad, or who may have performed labor in the operating of a railroad, and

to whom wages are due or owing, shall hereafter have a lien prior to all others upon such railroad and its equipment for such wages as are unpaid.

"Sec. 2. In all suits for wages due by a railroad company for such labor as heretofore mentioned, upon proof being satisfactorily made that such labor had been performed, either at the instance of said company, a contractor, or sub-contractor, or agent of said company, and that such wages are due, and the lien given by this act is sought to be enforced, it shall be the duty of the court having jurisdiction to try the same, to render judgment for the amount of wages found to be due, and to adjudge and order said railroad and equipments, or so much thereof as may be necessary, to be sold to satisfy said judgment. In all suits of this kind it shall not be necessary for the plaintiff to make other lien-holders defendants thereto, but such lien-holders may intervene and become parties thereto and have their respective rights adjusted and determined by the court.

"Sec. 3. Suits by mechanics, laborers, and operatives, for their wages due by railroad companies, may be instituted and prosecuted in any county in this state where such labor was performed, or in which the cause of action or part thereof accrued, or in the county in which the principal office of such railroad company is situated, and in all such suits service of process may be made in the manner now required by law.

"Sec. 4. The lien created by this act shall cease to be operative in twelve months after the creation of the lien, if no step be sooner taken to enforce it."

On the 15th of May, 1882, the Rio Grande and Pecos Railway Company, a Texas corporation, made a mortgage to the Mercantile Trust Company of the State of New York, a New York corporation, covering all the property, real and personal, of the Texas corporation, including its franchises, lands, railways, and other property, to secure $600,000 of coupon bonds issued by it, dated June 1, 1882, payable in thirty years and bearing semi-annual interest at the rate of 6 per cent per annum.

On or prior to the 27th of March, 1884, A. W. Wilcox pre-

sented a petition to the District Court of the county of Webb, in the State of Texas, subscribed and sworn to by him before the clerk of that court, in the words following:

"THE STATE OF TEXAS, *County of Webb.*
"To the hon. the district court of Webb county:
"The petition of A. W. Wilcox, who resides in the county of Webb, and State of Texas, complaining of the Rio Grande and Pecos R. R. Co., a corporation duly incorporated under the laws of the State of Texas, and operating its lines through the county of Webb, where it has its principal offices, represents that heretofore, to wit, on the 12th day of January, 1884, the said defendant, in consideration of the payment of claims for labor on said defendant's R. R., executed and delivered to your petitioner a certain promissory note (see note) for the sum of fifty-five hundred and twenty-six $\frac{78}{100}$ dollars, with interest, 10 per cent, whereby defendant promised and became liable to pay your petitioner the said note, with interest, according to the tenor thereof. Your petitioner represents that he is the owner and holder of said note, and that defendant has failed and refused to pay the said note, though thereto requested, to petitioner's damage. Wherefore he prays for judgment for his debt and interest, and damages, and foreclosure of his lien on defendant's railroad and equipments."

The promissory note referred to in said petition was as follows:

"LAREDO, TEXAS, *January 12th,* 1884.
"The Rio Grande and Pecos Railway Company, for value received, hereby promises to pay A. W. Wilcox, or bearer, on demand, the sum of fifty-five hundred and twenty-six $\frac{78}{100}$ dollars for services, and for amounts advanced on claims for labor performed in the construction and maintenance of the Rio Grande and Pecos Railroad, with interest at ten per cent per annum until paid, and upon default in payment A. S. McLane is hereby authorized, in the name of the said Rio Grande and Pecos Railroad Company, to confess judgment in any court

of competent jurisdiction, hereby waiving citation and service thereof.

"The Rio Grande and Pecos
Railway Company,
" By A. C. Hunt, *The President.*
" [Corporate Seal of The Rio Grande
and Pecos Railway Company.] "

On the 27th of March, 1884, the District Court rendered the following judgment :

"A. W. Wilcox
*v.*  } 435.
"The Rio Grande & Pecos R'y Co.

" This day came plaintiff, and the defendant, by attorney-in-fact, A. S. McLane, comes and says that he cannot deny the action of the said A. W. Wilcox, and that he is justly indebted to plaintiff in the sum of fifty-five hundred and twenty-six and $\frac{78}{100}$ dollars, with ten per cent interest thereon from the 12th day of January, 1884, and it appearing to the court that a sufficient power of attorney has been filed in this cause authorizing A. S. McLane, in default of payment, to confess judgment before any court of competent jurisdiction, and waiving citation and service, it is therefore ordered, adjudged and decreed, that the plaintiff A. W. Wilcox, have and recover of the defendant, The Rio Grande and Pecos Railroad Company, the sum of fifty-five hundred and twenty-six $\frac{78}{100}$ dollars, with ten per cent interest thereon from the 12th day of January, 1884, for which execution may issue. It is further ordered by the court that the plaintiff have a lien on the said Rio Grande and Pecos Railroad Company and its equipments to secure the payment of this judgment, and that said railroad and its equipments, or so much thereof as may be necessary, be sold to satisfy this judgment."

On the 14th of April, 1884, C. B. Wright, a citizen of Pennsylvania and a holder of $121,000 of the bonds, the interest on which, due December 1, 1883, had not been paid, filed a bill

in equity in the Circuit Court of the United States for the Western District of Texas, against the railway company and the Mercantile Trust Company, setting forth that the railway company was the owner of valuable coal lands in the county of Webb, and had recently constructed a railroad from Santo Tomas to Laredo; that the business of the railway was that of a railway and transportation company and of a miner of coal; that recently there had been expended a large amount of money in opening the coal-beds, and erecting appliances for mining the coal and transporting it to market; that the principal business of the railroad was the transportation of the coal thus mined; that the value of the assets of the company consisted largely in the fact that the coal mines and the railroad were owned by the same corporation; and that any separation of the two properties would be disastrous to the creditors of the company, and would lessen materially the aggregate value of the two properties.

The bill then set forth the making of the bonds and the mortgage, and the interest of the plaintiff in the bonds; that the company had recently incurred a debt of between $20,000 and $40,000, in constructing and equipping the railroad; that, under the laws of Texas, such debt was entitled to a first lien on the road and its franchises and property, in preference to the first-mortgage bondholders, for a period of twelve months after its completion; that long before the expiration of twelve months from such completion, suits were brought upon many, if not upon all, "of the labor and material claims above mentioned," and judgment in some instances had been had thereon, on which executions had been issued which were then pending against the company, and under which, unless some relief was afforded by the court in which the bill was filed, a large portion of the property of the company would be diverted by sales by the sheriff, and the property be thus separated and its aggregate value impaired; that, in addition to such indebtedness, there was outstanding a large unsecured indebtedness, on which suit would shortly be brought, unless the property were put into the hands of a receiver; that the company was insolvent and unable to meet the interest on its fixed charges or its

ordinary debts and obligations; and that there was urgent necessity for the interference of the court, to protect the property from suits and executions, and to preserve it as a whole, so that its business might continue to be carried on, and its income and assets be applied to the payment of its debts in due order, for the general advantage of all its creditors, and more especially to enable provision to be made by the first-mortgage bondholders for the payment of the obligations held by laborers, material-men, and others, who, under the laws of Texas, were entitled to a lien upon the property, prior to that of the first-mortgage bondholders.

The prayer of the bill was, that the rights of the creditors of the company might be ascertained and declared; that, as it was doubtful whether the Mercantile Trust Company could, under the laws of Texas, take possession of the mortgaged property, the court would appoint a receiver to take possession of it, with such power and authority in regard to the preservation and use of it as should seem best adapted to protect the interests of all the persons concerned; and for general relief. The bill was not sworn to.

On the same 14th of April, 1884, the railroad company filed an answer, signed by its president, and which had been sworn to by him on the 9th of April, 1884, which stated that there were outstanding a large number of claims for work and labor done in and about the construction of the railroad of the company, and judgments had been obtained on some of the claims, on which executions had been issued, and, although sales under them had been put off from time to time, portions of the property would be exposed to sale under the executions, unless prevented by the decree of the court; and that the property of the company would be irreparably injured by any separation of its coal and railway properties, the two being both necessary for the transaction of its business of mining coal and transporting it to market. The company submitted itself to the decree of the court.

On the same 14th of April, 1884, an order, signed by the circuit judge, entitled in the cause, was filed, which stated that on the 9th of April, 1884, the case was heard on a motion

for the appointment of a receiver, on bill and affidavits, the plaintiff and the company appearing. By the order, one Smith was appointed receiver of the company and of its franchises and all its property. The order authorized the receiver to run and operate the railway, to preserve the property, to continue the mining operations and sell the coal already mined or to be mined, and out of the proceeds to pay wages, current expenses, and interest. It also directed the receiver to ascertain and report the condition of the property and of the debts charged thereon or owing by the company, and directed that, upon presenting such report, he be authorized to borrow money to pay the running expenses of the company, and to settle and pay off liens prior to the first-mortgage bonds, and all other expenses incurred by him, including his own compensation as receiver, and to issue receiver's certificates for the same, in such form and amounts as should be from time to time authorized by the court.

On the 11th of June, 1884, the court made an order directing the receiver to prepare certificates in a form given in the order, to an amount not exceeding $25,000, which certificates, together with such further like certificates as might be thereafter authorized by the court, the order stated should be a first and exclusive lien upon all the property of the company, prior to any other liens thereupon, each certificate to be for $1000, with interest at the rate of eight per cent per annum, and payable out of any surplus money in the hands of the receiver after paying the running expenses of the company; that he might dispose of the certificates at not more than one per cent discount, and that, after exhausting the receipts of the railroad, he should pay out of the proceeds of the certificates (1) the running expenses of the company which had accrued since his appointment as receiver, including the expenses of the first-mortgage bondholders in obtaining his appointment; and (2) out of the balance remaining, pay so much of the debts of the company as might be reported by the master and approved by the judge, taking an assignment of the claims to himself as receiver

That order also appointed a master to report upon all claims

which should be presented to him after the publication by him of a notice calling on all persons having or asserting any claims, by judgment or otherwise, prior to the first-mortgage bonds, or entitled to a preference in payment out of the proceeds of the road, to present and file the same with him.

On the 24th of June, 1884, under that order, the said A. W. Wilcox filed with the master the following claim: "A judgment of the District Court of Webb County, Texas, rendered March 27th, 1884, in cause No. 435, in favor of the said A. W. Wilcox against the said Rio Grande and Pecos Railway Company, for $5526.78, with ten per cent interest thereon from January 12, 1884, and declaring and establishing a lien on said Rio Grande and Pecos Railway and its equipments, to secure the payment of said judgment, and directing the said railway and its equipments, or so much thereof as may be necessary, to be sold to satisfy the said judgment, as will more fully appear by a duly certified copy of said judgment hereto annexed, marked 'Exhibit A,' and made a part hereof. The lien declared in said judgment is based upon money due by the said Rio Grande and Pecos Railway Company to mechanics, laborers and operatives who performed labor in the constructing and repairing and operating said railway, and thereby under the laws of Texas acquired a lien prior to all others, and that said claims so constituting a prior lien were bought by the said A. W. Wilcox, and the said Rio Grande and Pecos Railway Company acknowledged the existence thereof, and promised to pay the same by its obligation and note of date January 12, 1884, upon which obligation and note the said judgment was rendered. The said judgment is unreversed and remains in full force. And the said A. W. Wilcox claims that his said lien, established by said judgment before the institution of this suit or the appointment of a receiver, is prior to the first-mortgage bonds, and is entitled to preference of payment out of the earnings and proceeds of said railway, and will apply to this court for such appropriate orders as will secure prompt payment." The claim was sworn to by Wilcox on the 23d of June, 1884.

The master filed his report upon the claims, and among them

the claim of Wilcox, on the 27th of September, 1884. By that report it appears that Wright, the plaintiff in this suit, filed objections before the master to the allowance of the claim of Wilcox, on these grounds: (1) that the judgment in favor of Wilcox in the District Court of the county of Webb was obtained by fraud and collusion between Wilcox and the president of the company; (2) that the note was without consideration and fraudulent; (3) that, for the purpose of defeating the lien of the mortgage, Wilcox falsely represented to the District Court that the note was for services and for amounts advanced on claims for labor performed in the construction and maintenance of the railroad, and that it was entitled to a lien prior to all others to secure its payment; that he was not entitled to any lien; that he performed no services and owned no claims which entitled him to such lien; that any lien was barred by the limitation of one year; that the act of the president of the company in making the note and in authorizing the confession of the judgment was *ultra vires;* and that the company was not indebted to Wilcox by reason of the note, and it was without consideration. The paper containing the objections also stated that Wright had, on the 19th of July, 1884, filed his suit against Wilcox, in the District Court of the county of Webb, to set aside and annul the said judgment on account of the acts of collusion and fraud in procuring the same, and that such suit was still pending.

It also appears by the report of the master, that Wilcox introduced before the master, as evidence in support of his claim, a copy of his petition to the District Court of the county of Webb, a copy of the promissory note, and a copy of the judgment of March 27, 1884, and that other evidence was put in by the respective parties, Wilcox and Wright.

The master reported that the note included amounts which were not secured by a lien under the state act of 1879, as well as amounts which were. The conclusion of the master was that Wilcox had a valid claim against the company for $5526.78, with 10 per cent interest from January 12, 1884; but that he had no lien prior to that of the first-mortgage bondholders. On the 6th of October, 1884, Wilcox filed exceptions to the report.

On the 7th of October, 1884, the Mercantile Trust Company was duly removed from its office as trustee under the mortgage, and William S. Hassall, of Philadelphia, was appointed trustee in its place. By an order of the court, the bill was dismissed as to the Mercantile Trust Company, and Hassall, as trustee, was joined as plaintiff with Wright; and a decree was entered by consent, on the 20th of October, 1884, providing for a sale of the property at auction by the trustee, which was modified by a further decree made December 10, 1884, directing the sale of the property free from all liens, for a sum not less than $100,000, which sum, it was stated, would cover the amount of the receiver's certificates and of the claims reported by the master. The sale was made, and the property was purchased by Wright and for the sum of $100,000. On the 19th of May, 1885, a decree was made confirming the sale and allowing certain claims as liens prior to the lien of the mortgage, and among them the claim of A. W. Wilcox, for the sum of $5526.78, with interest at 8 per cent per annum from the day of the contracting of the lien, such amount to be paid after the payment of the receiver's certificates and before any payment to the bondholders. On the 18th of June, 1885, Hassall, as trustee, appealed to this court from such decree, but the appeal was dismissed as to all the claimants but Wilcox. *Hassall* v. *Wilcox*, 115 U. S. 598.

Although the statute of Texas under which the superior lien of Wilcox is claimed was passed in 1879, prior to the making of the mortgage in 1882, and although Wilcox brought his suit and obtained his judgment in the state court prior to the filing of the present bill, we do not think it can be held that the trustee under the mortgage or the bondholders were bound by that judgment rendered in a suit to which they were not made parties. Although they had a right to intervene in that suit, they were not obliged to do so, nor was Wright obliged to prosecute the suit which he brought in the state court. They had a right to come into the Circuit Court of the United States to contest the priority of Wilcox's lien, and, as his claim originated after the mortgage was made, compel him to prove affirmatively in that court the existence and priority

of his lien, under the statute of Texas. He undertook to do
so, but the master reported that he found, from the evidence,
that the note on which the judgment was predicated included
amounts not secured by a lien under the act of 1879, as well
as amounts for which a lien was given under that act; and
that Wilcox had no lien prior to the first mortgage bondhold-
ers. On exceptions by Wilcox, the Circuit Court sustained his
exceptions, and awarded him a lien with the priority he
claimed, for the full amount of $5526.78, with interest. We
do not think the evidence before the master sustained the lien
for the whole of that amount.

One of the exceptions taken by Wilcox to the master's re-
port was, that the master had, by his finding, nullified the
legal force and effect of the judgment of the state court.
The Circuit Court may have proceeded on that ground, in its
decree. But we do not think that the proceeding in the state
court can be sustained as one *in rem*. It is essential to such a
proceeding that there should at least be constructive notice, by
some form of publication or advertisement, to adverse claim-
ants, to appear and maintain their rights before a judgment in
such a proceeding can operate even as *prima facie* evidence.
*Windsor* v. *McVeigh*, 93 U. S. 274, 278, 279. In the present
case, no notice, either personal or constructive, was provided
for by the Texas statute, or was given to the other lien-
holders.

The claim of Wilcox was presented before the master and
the Circuit Court as a claim founded wholly on his judgment
and on the statute of Texas and not as a claim arising on
the principle adjudged in *Union Trust Co.* v. *Morrison*, 125
U. S. 591, or that acted on in the case of *Fosdick* v. *Schall*, 99
U. S. 235, and the cases which followed it; and no facts are
shown to sustain it as a claim founded on anything but the
statute of Texas.

The appellant claims that the evidence before the master
shows that only $382.21 of Wilcox's claim consists of items
for which the statute of Texas gives a lien. But, as the mas-
ter, though saying that the note included amounts for which a

lien was given under the act, did not attempt to state what was the total of such amounts, it is proper that

*The decree should be reversed, and the case be remanded to the Circuit Court, with a direction to allow a reëxamination of the claim of Wilcox, before a master, on the same and further proofs, if desired; and it is so ordered.*