CONTINENTAL & COMMERCIAL TRUST & SAVINGS BANK v. PACIFIC COAST PIPE CO. et al.

(Circuit Court of Appeals, Ninth Circuit. May 3, 1915.)

No. 2452.

1. MECHANICS' LIENS ⬤⟹260—EXTINGUISHMENT—RIGHT CONDITIONED BY LIMITATION.

The provision of Rev. Codes Idaho, § 5118, relating to mechanics' liens, that "no lien provided for in this chapter binds any building, mining claim, improvement or structure for a longer period than six months after the claim has been filed, unless proceedings be commenced in a proper court within that time to enforce such lien," makes the remedy a part of the right created. The limitation prescribed conditions the right; and, unless suit is brought within the time limited, the lien itself ceases to exist.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 456, 458–468; Dec. Dig. ⬤⟹260.

Continuance or revival of Mechanic's Lien, see note to Westinghouse Air Brake Co. v. Kansas City Southern Ry. Co., 71 C. C. A. 17.]

2. MECHANICS' LIENS ⬤⟹260—EXTINGUISHMENT—LIENHOLDERS NOT JOINED IN FORECLOSURE SUIT—STATUTORY LIMITATION.

The statute does not prescribe in terms who shall be made parties to such suit, but it necessarily means that it must be brought against all whose rights, estates, or interests are claimed to be adverse and subordinate; otherwise they are not affected by it, and as to them the lien ceases to be effective after the expiration of the six-month limitation period.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 456, 458–468; Dec. Dig. ⬤⟹260.]

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit in equity by the Continental & Commercial Trust & Savings Bank, trustee, against the Kings Hill Irrigation & Power Company and others. From a decree denying its right to a mechanic's lien as against complainant, the defendant Pacific Coast Pipe Company appeals. Affirmed.

March 30, 1904, under and pursuant to the provisions of certain acts of Congress authorizing the same, the Secretary of the Interior, for and on behalf of the United States, entered into an agreement with the Governor of the state of Idaho, acting in its behalf, concerning certain specified tracts of

desert land, aggregating 17,666.72 acres, situate within the state of Idaho, which that state proposed should be irrigated and reclaimed in accordance with the plan therein exhibited (including the source of the water to be used for the purpose), by which agreement the United States agreed to "donate, grant, and patent to said state or to its assigns, free from cost of survey or price, any particular tract or tracts of said lands whenever an ample supply of water is actually furnished in a substantial ditch or canal, or by artesian wells or reservoirs, to reclaim the same in accordance with the provisions of said acts of Congress, and with the regulations issued thereunder, and with the terms of this contract, at any time within ten years from the date of approval of the said map of the lands."

Among the various provisions and conditions specified in the agreement are the following: "It is further understood and agreed that said state shall have full power, right, and authority to enact such laws, and from time to time make and enter into such contracts and agreements, and to create and assume such obligations in relation to and concerning said lands as may be necessary to induce and cause such irrigation and reclamation thereof as is required by this contract and the said acts of Congress; but no such law, contract, or obligation shall in any way bind or obligate the United States to do or perform any act not clearly directed and set forth in this contract and said acts of Congress, and then only after the requirements of said acts and contract have been fully complied with. * * * It is further understood and agreed that as soon as an ample supply of water is actually furnished in a substantial ditch or canal, or by artesian wells or reservoirs, to reclaim a particular tract or tracts of said lands, the said state, or its assigns, may make proof thereof under and according to such rules and regulations as may be prescribed therefor by the Secretary of the Interior, and as soon as such proof shall have been examined and found to be satisfactory, patents shall issue to said state, or to its assigns, for the tracts included in said proof."

Subsequently the Glenns Ferry Land & Irrigation Company, the predecessor of the Kings Hill Irrigation & Power Company, undertook after application to and authority from the state of Idaho, the construction of an irrigation system to supply the said lands with water and thereby to reclaim them. In the execution of that purpose certain water right contracts were entered into between the promoters of the irrigation project and the settlers upon the lands needing water, and subsequently, to wit, on the 2d day of November, 1908, the Kings Hill Irrigation & Power Company executed to the Continental & Commercial Trust & Savings Bank, as trustee, a mortgage to secure an issue of bonds of the Irrigation & Power Company in the amount of $500,-000, and on March 1, 1909, an amendment thereto covering, among other things, the said water bonds and certain shares of the capital stock of the Glenns Ferry Canal Company, Limited. The original mortgage was duly recorded December 9, 1908, and the amendment thereto was similarly recorded March 19, 1909, in the counties in which were situated the properties covered by those instruments. In the course of the construction of the irrigation system, and at the request of the Kings Hill Irrigation & Power Company, the Pipe Company, as an original contractor, sold and delivered to the Irrigation & Power Company certain materials to be used, and which were actually used, in the construction and repair of the irrigation system, of the value of $12,363.24, which material was commenced to be furnished July 13, 1909, and was continued to be furnished to July 2, 1910. Not having been paid for, the Pipe Company filed a claim of lien in Elmore county, Idaho, August 4, 1910, and on August 5, 1910, in Owyhee county of the same state, being within 60 days after the last material was furnished and the counties mentioned being the counties in which are situated the waterworks for which such material was so furnished. October 31, 1910, the Pipe Company commenced an action in one of the courts of Idaho for the enforcement of its lien, making as sole defendant thereto the Kings Hill Irrigation & Power Company, and such proceedings were had in that case that the lien was foreclosed, and the property of the Irrigation Company on which the lien was asserted was acquired by the Pacific Coast Pipe Company through a master's deed prior to the trial of the present suit in the court below, which last-mentioned suit was brought

December 28, 1912, by the Continental & Commercial Trust &¡ Savings Bank as trustee to foreclose its mortgage lien, to which suit were made parties defendant, among others, the Kings Hill Irrigation & Power Company, the Glenns Ferry Canal Company, Limited, and the Pacific Coast Pipe Company. The bill in that suit alleged, among other things, the execution of the mortgage and of the amendment thereto, and that bonds to the face value of $358,400 were executed, certified by the trustee, and sold in accordance with the terms and conditions of the mortgage, and that the Irrigation & Power Company had failed to pay either the interest or principal thereof, and prayed judgment for such sum as should be found to be due the complainant, and that the same be declared a lien upon the mortgaged premises, and that the property be ordered sold to satisfy such amount.

To the bill the Pacific Coast Pipe Company filed a separate answer and also filed a cross-bill, in which latter it alleged, among other things, that at the times therein stated the Kings Hill Irrigation & Power Company was the owner of a certain ditch, flume, and canal known as the "Kings Hill Canal," and the right of way therefor, located in Lincoln, Twin Falls, Owyhee, and Elmore county, in the state of Idaho, together with all of its appurtenances; that between July 13, 1909, and July 2, 1910, the cross-complainant, at the request of the Kings Hill Irrigation & Power Company, and as an original contractor, sold and delivered to the Irrigation & Power Company certain materials to be used, and which were actually used, in the construction and repair of the ditch, flume, and canal therein described, which material so furnished was of the reasonable value of $12,363.24; that after crediting the payments made thereon, there remained due from the Irrigation & Power Company to the Pipe Company therefor $10,071.33, with interest; that the cross-complainant completed the furnishing of such materials on July 2, 1910, and within the time allowed by the laws of the state of Idaho filed for record in the proper counties its claim of lien duly verified, which was recorded in Elmore county August 4, and in Owyhee county August 5, 1910, a copy of which notice of lien was attached to the cross-complaint; that thereafter, to wit, October 31, 1910, and within the time allowed by the laws of Idaho, the cross-complainant commenced an action against the Kings Hill Irrigation & Power Company in the district court of Elmore county in the state, to enforce its said lien, in which action the Irrigation & Power Company appeared and procured the removal of the action to the United States Circuit Court for the District of Idaho, Southern Division, in which court judgment was duly entered in favor of the Pipe Company on the 30th of December, 1911, establishing the amount due the plaintiff in the action and adjudging it a lien "upon the ditch, flume, canal, and right of way, and all the property of the said" Irrigation & Power Company described in the complaint in that action, being a part of the same property described in the bill of complaint in the present suit.

The cross-bill also set up the sale under that judgment of the property therein described, its nonredemption, and subsequent conveyance by the special master to the Pipe Company. It further alleged that on May 1, 1908, the Irrigation & Power Company entered into a contract with the state of Idaho, whereby it agreed to construct an irrigation system for the irrigation and reclamation of the lands already referred to, under and pursuant to the provisions of the said acts of Congress, specifically describing the said works, and alleging that the materials so sold and delivered by the cross-complainant to the Irrigation & Power Company were to be used, and were actually used, in the construction and completion of such work; that the said works were constructed "over, along, across, and upon the public lands of the United States and lands of the state of Idaho, and the completion of such canals and other structures, comprising the main canal and distribution system of the works so to be constructed, was essential and necessary to the securing to said Kings Hill Irrigation & Power Company of a right, title, or interest in and to such right of way; and this cross-complainant avers that said Kings Hill Irrigation & Power Company had and acquired no right, title, or interest whatsoever in and to said right of way prior to the furnishing by this cross-complainant of the materials hereinbefore in this cross-complaint referred

to and their actual use in the construction and completion of the canals and works referred to, being the canals, structures, and irrigation works hereinbefore set out and described in this cross-complaint and in the original bill of complaint herein of the Continental & Commercial Trust & Savings Bank, as trustee." And "that its lien for the materials so furnished to be used, and which were actually used, in the said irrigation works and system, canals, pipe lines, and other structures, as hereinbefore in this cross-complaint set out, was and is prior and superior to the lien of the trust deed and mortgage set out in said original bill of complaint in this action."

To the cross-complaint the complainant in the present suit filed an answer, in which, among other things, it denied that the Irrigation & Power Company had acquired no.right to the right of way referred to in the cross-complaint prior to the furnishing by the Pipe Company of the materials mentioned and their actual use in the construction of the irrigation works, and denied that any lien of the cross-complainant for any materials so furnished to and used by the Irrigation & Power Company was or is prior or superior to the lien of the complainant's mortgage, but, on the contrary, alleges that any such lien of the cross-complainant is subsequent and inferior to the complainant's mortgage lien.

It appears that the main canal of the irrigation system was completed prior to December 28, 1909, and that the Irrigation & Power Company had furnished water for irrigation during a part of the year 1909. Thereafter two branches of the system were constructed, in the construction of which the material furnished by the Pipe Company was used, one of them extending across the Snake river to Kings Hill, and the other a pumping system at what is spoken of in the record as Tuana Gulch.

N. M. Ruick, of Boise, Idaho, for appellant Pacific Coast Pipe Co.

Levy Mayer and Charles L. Powell, both of Chicago, Ill., Richards & Haga, of Boise, Idaho, and Mayer, Meyer, Austrian & Platt, of Chicago, Ill., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The appellant contends that its lien was superior to that of the appellee's mortgage and had not expired as to the latter at the time it filed its crossbill to foreclose. The court below held against the appellant upon the last proposition, and if it was correct in that ruling, it will be unnecessary for us, as it was for that court, to determine which was the prior lien.

[1] Mechanics' and materialmen's liens do not exist under the common law, but are creatures of statute law only. Section 5110 of the Idaho Revised Codes gives to every person performing labor upon or furnishing materials to be used in the construction, alteration, or repair of any mining claim, building, wharf, bridge, ditch, dyke, flume, tunnel, fence, machinery, railroad, wagon road, aqueduct to create hydraulic power, or any other structure, a lien upon the same for work done or materials furnished. Section 5114 of the same statutes provides that such liens are preferred to other incumbrances attaching subsequent to the time when the structure was commenced or the work done or materials furnished. Section 5115 requires that any person claiming such a lien shall, within the period therein prescribed, file in the office of the county recorder of the county in which the property is situated his verified claim therefor, stating certain prescribed facts, and section 5118 is as follows:

"No lien provided for in this chapter binds any building, mining claim, improvement or structure for a longer period than six months after the claim has been filed, unless proceedings be commenced in a proper court within that time to enforce such lien; or, if a credit be given, then six months after the expiration of such credit; but no lien shall continue in force under this chapter for a longer period than two years from the time the work is completed, or credit given, unless proceedings to enforce the same shall have been commenced."

The true construction of the first clause of the section just quoted is, we think, the controlling question in the case. As will be seen, it in effect expressly declares that no such lien given by the Idaho statute shall bind any structure to which it has attached for a longer period than six months after the claim has been filed, unless proceedings be commenced in a proper court within that time to enforce such lien. In other words, the remedy is by the statute made a part of the right created. It was so held in respect to an analogous statute, by the Supreme Court in the case of The Harrisburg, 119 U. S. 199, 214, 7 Sup. Ct. 140, 147, 30 L. Ed. 358. That was a suit in admiralty brought by the widow and child of one Rickards to recover damages for his death, caused by the alleged negligence of a schooner of which he was first officer. As no such suit could be maintained in the courts of the United States in the absence of an act of Congress or a statute of a state, the action depended wholly upon a statute of the state of Pennsylvania, which gave to the widow and child a cause of action therefor, but in doing so expressly declared that "the action shall be brought within one year after the death and not thereafter." The Supreme Court in deciding the case expressly held:

"The statutes create a new legal liability, with the right to a suit for its enforcement, provided the suit is brought within 12 months, and not otherwise. The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to the right to sue at all."

The applicability of that decision of the Supreme Court to the facts of the present case is not, we think, affected by the subsequent decision of the same court in the case of Bear Lake Irrigation Co. v. Garland, 164 U. S. 1, 17 Sup. Ct. 7, 41 L. Ed. 327. In that case there was a lien law of the state of Utah very similar to the statutory provisions of the state of Idaho, and there the question was, as it is here, between one who claimed a lien for work done and a trust company which claimed a mortgage lien upon the same property, the work there having been commenced by the contractor prior to the execution of the mortgage, and the statute in force at the time of the execution of the contract and of the commencement of the work requiring the claimant to commence an "action to enforce his lien within ninety days from the time when he filed his claim for a lien." Before the expiration of the 90 days thus provided for, and, indeed, before the completion of the contractor's work or the filing of his claim of lien, the state of Utah passed, on the 12th day of March, 1890, another lien law, making provisions for the creation and enforcement of such liens, section 21 of which provided that:

"No lien claimed by virtue of this act shall hold the property longer than one year after filing the statement firstly described in section 10, unless an

action be commenced within that time to enforce the same" (Laws 1890, c. 30)

—and containing a clause formally repealing the old act, the latter having been passed in 1888. Notwithstanding such repeal, the Supreme Court construed the new statute as a continuation of the old one, with the modifications as provided in the new act, saying (164 U. S. 11, 17 Sup. Ct. 9, 41 L. Ed. 327):

"Upon comparing the two acts of 1888 and 1890 together, it is seen that they both legislate upon the same subject, and in many cases the provisions of the two statutes are similar and almost identical. Although there is a formal repeal of the old by the new statute, still there never has been a moment of time since the passage of the act of 1888 when these similar provisions have not been in force. Notwithstanding, therefore, this formal repeal, it is, as we think, entirely correct to say that the new act should be construed as a continuation of the old with the modification contained in the new act."

And the court held that the 90 days allowed by the act of 1888 after the filing of the claim of lien, for the commencement of an action to enforce it, was extended by section 21 of the act of 1890 to one year, and that as such extension became effective before the work in that case was completed and the claim of lien filed, suit for the labor lien claimed was not required to be commenced before the expiration of one year from the time of the filing of the claim, the court saying:

"The two acts in question here are of a similar nature, relating to the same general subject-matter, and making provisions for the creation and enforcement of mechanic's liens. The new act of 1890, although in terms repealing the earlier act, is yet in truth, and for the reasons already given, a continuation of that act with the modifications as provided in the new one. One of those modifications is the extension of the time in which to commence the action to foreclose the lien after the filing of the statement which claims it. Where at the time of the passage of the new act the proposed lienor has only entered upon the execution of his contract and has not yet completed the work under it, we think that at least as to him the provision enlarging the time in which to commence the action to foreclose the lien is applicable, and there is no retroactive effect thereby given to that provision of the new act.

"It may be asked what effect is given under this construction to the language of the proviso contained in section 32 of the act of 1890, already quoted. The answer is that the mere enlargement of the time in which to commence the action, at least in a case where the time had not yet arrived in which to file any statement of the plaintiff's claim for a lien, does not affect any right or remedy provided for in the old act. The right, as that term is used in the statute, consisted of the right of sale of the property in order, if necessary, to obtain payment of the money due the contractor. The remedy consisted of the taking of certain proceedings by which this sale was to be accomplished. Prior to the arrival of the time when one of these steps was to be taken, an alteration of the statute by which the time to take that step might be enlarged was not an alteration of the 'right' or of the 'remedy,' as those terms are used in the statute, nor did it in any way affect either; it was simply an alteration of the mere procedure in the course of an employment of a remedy, the remedy itself remaining untouched or unaffected by such alteration. In this case such an enlargement of time to commence an action was given before the time had arrived in which the action could have been commenced under the old statute. The new statute was prospective in its operation, even as applied to this case. Of course, if the new act had curtailed the time in which to bring the action, after the time had commenced to run under the old statute, totally different considerations would spring up, and what was a mere alteration of procedure, having really nothing to do with a remedy in the one case, might, in the other, most seriously

affect it, and hence come within the proviso in question. Under the facts of this case the right or remedy of the plaintiff was not touched, or, in the language of the proviso, was not 'affected' by the enlargement of the time in which to commence the action, and therefore the proviso did not take the plaintiff's case out of the application of the section in the new act providing such enlarged time.

"Under the construction given by us to the act of 1890, as a continuation of that of 1888, with modifications, the question as to which act the lien is claimed under is not specially material. In effect, it is one act, and those labors, etc., which were performed before the passage of the act of 1890 are added to those performed thereafter. The lien is really claimed by virtue of the fact that at the time when the contract was entered into the statute of Utah provided such a right or remedy, and although the action to foreclose the lien was commenced under the provisions of the act of 1890, yet the right itself commenced under the old act. That right is not affected by any provision of the new act, and although it is claimed that the right and the remedy must go together under the old act, as they are preserved in the same language, yet, for the reasons already given, the time in which to commence the action is no part of the 'remedy' as that word is used in the proviso, and an extension of that time may be provided for in the new act without in any way affecting the right or remedy of the lienor where the facts are the same as in this case.

"It may be assumed that where a statute creates a right not known to the common law, and provides a remedy for the enforcement of such right, and limits the time within which the remedy must be pursued, the remedy in such case forms a part of the right, and must be pursued within the time prescribed, or else the right and remedy are both lost; but it does not, therefore, follow that the plaintiff's right to a lien and to maintain this action must be based solely upon the act of 1888.

"We must bear in mind the position of the plaintiff when the act of 1890 was passed. He had not then completed his contract, and could not therefore file any statement of claim, nor could he commence any action. The particular time in which he would be allowed to commence his action (provided a sufficient time in fact were given) was, under such circumstances, mere matter of procedure as distinguished from remedy. The remedy would not thereby be altered, because the remedy consisted in filing the statement and in commencing the action. The time in which to do either would be matter of procedure only. Hence, when the act of 1890 was passed, which enlarged the time in which to commence the action already provided for, such enlargement did not affect any right or remedy of the plaintiff. It did not affect either, because the provision applied only to procedure and not to right or remedy, and therefore the plaintiff could avail himself of the time given him by the act of 1890 in which to commence his action as one of the steps in procedure by which the remedy for a violation of the contract by the enforcement of foreclosure of the lien would be accomplished.

"We conclude that the lien of the plaintiff was valid and superior to the mortgage of the Mortgage Trust Company."

There has been no modification of the Idaho statute expressly declaring that no mechanic's or materialman's lien shall bind any property for a longer period than six months after the claim has been filed, unless proceedings be commenced in a proper court within that time to enforce such lien, or if a credit be given, then within six months after the expiration of such credit, nor for a longer period than two years from the time that the work is completed or credit given, unless proceedings to enforce the same shall have been commenced.

Under similar statutes the Supreme Courts of several of the states have held that the time specified for the commencement of action for the enforcement of such liens enters into and is a part of the right of lien. See Davis v. Bartz, 65 Wash. 395, 118 Pac. 334; Dunphy v.

Riddle, 86 Ill. 22; Crowl v. Nagle, 86 Ill. 437; McGraw v. Bayard, 96 Ill. 146; Smith v. Hurd, 50 Minn. 503, 52 N. W. 922, 36 Am. St. Rep. 661; Falconer v. Cochran, 68 Minn. 405, 71 N. W. 386; Hokanson v. Gunderson, 54 Minn. 499, 56 N. W. 172, 40 Am. St. Rep. 354; Deming-Colborn, etc., v. Union Nat., etc., 151 Ind. 463, 51 N. E. 936; Union Nat., etc., v. Helberg, 152 Ind. 139, 51 N. E. 916; Stoermer v. People's. Savings Bk., 152 Ind. 104, 52 N. E. 606; Green v. Sanford, 34 Neb. 363, 51 N. W. 967; Ballard v. Thompson, 40 Neb. 529, 58 N. W. 1133; Jaicks v. Sullivan, 126 Mo. 177, 30 S. W. 890; Badger L. Co. v. Staley, 141 Mo. App. 295, 125 S. W. 779.

. Decisions based upon statutes which do not make the requirements in respect to the time of the commencement of suit a part of the right to the lien claimed are inapplicable.

[2] The Idaho statute does not, in terms, prescribe who shall be made parties to the action thereby required to be brought; but we agree with the learned judge of the court below that it necessarily means that it must be brought against all of those whose rights, estates, or interests are claimed to be adverse and subordinate; otherwise they could not be concluded. In the instant case the trustee was manifestly entitled to contest the amount, the validity, and the priority of the lien claimed for labor and material, and, of course, to its day in court for that purpose. But at the time it was called upon to do so the life of the appellant's lien had ended by the very terms of the statute which created it. As said by the court below:

"The argument that the limitation does not apply to a mortgage because the validity and amount of a mechanic's lien may be established in a suit between the claimant and the owner of the property alone, and that the only issue in which the mortgagee is interested, namely, the date or relative dignity of the lien, may be tried out in a subsequent suit to redeem, in so far as it has any force at all, rests upon an erroneous assumption, which is that the mortgagee has no right to question the amount or validity of the claim of lien. These are issues which the incumbrancer, equally with the owner, may raise, and for that purpose the mortgagee is entitled to his day in court. If, for instance, a lien were asserted for the value of material which was never furnished for use in a structure covered by the mortgage, it must be clear that the mortgagee may, by showing the fact, defeat the lien, or reduce the amount thereof."

In Hassall v. Wilcox, 130 U. S. 493, 9 Sup. Ct. 590, 32 L. Ed. 1001, a statute of Texas, passed in 1879, gave a lien for wages to mechanics and laborers, on a railroad, prior to all other liens, and authorized its enforcement, in a suit, by a judgment for the sale of the railroad, and provided that it should not be necessary to make other lienholders defendants, but that they might intervene and become parties. It did not provide for any notice by publication. In 1882, a railroad in Texas was mortgaged to secure bonds. In 1884, a creditor of the railroad company holding such labor claims, in a suit against it alone, in a court of the state, obtained a judgment for his claim and lien, and for the sale of the railroad. In a suit afterwards brought by a bondholder, in the Circuit Court of the United States, to have the rights of the creditors of the company ascertained, and a receiver appointed, it was referred to a master to report on the priority of claims. The creditor by judgment presented his claim; it was objected to by the bondholder

as fraudulent and embracing amounts not covered by the statutory lien. The master reported that the claim included amounts which were not a lien, as well as amounts which were, but did not separate them; that the claim was a valid one against the company, but that it was not a lien entitled to priority. The court, on exceptions, awarded priority of lien to the claim, for the full amount of the judgment. It was held, among other things, that the bondholders were not bound by the judgment rendered in the suit to which they were not made parties. So here, the trustee is not bound by the judgment obtained by the appellant against the owner of the property, and the. lien of the appellant having, by the express provision of the statute creating it, ended long prior to the time when the appellant attempted to assert it as against the trustee, we hold that it was then without any life.

The judgment is affirmed.