**TYRONZA SPECIAL SCHOOL DIST. OF POINSETT COUNTY, ARK., et al. v. SPEER et al.**

No. 10991.

Circuit Court of Appeals, Eighth Circuit.

March 3, 1938.

E. L. Westbrooke, of Jonesboro, Ark. (E. L. Westbrooke, Jr., of Jonesboro, Ark., on the brief), for appellants.

Wallace Townsend, of Little Rock, Ark., for appellees.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a decree in equity awarding recovery upon two series of negotiable bonds issued by the appellant school district.

The district was created on July 27, 1916, by order of the county court of Poinsett county, Ark., as rural special school district No. 3. The laws of the state provide for two types of special school districts: (1) "Rural special school districts" and (2) "special school districts." The boards of directors of both types are authorized "to borrow money for the purpose of purchasing a school site or sites and building, erecting, constructing, repairing, and equipping a school building," etc., and, in order to raise funds for such purpose, to issue and sell negotiable interest-coupon bonds secured by trust deed conveying and pledging the property and tax resources of the district for their payment. Crawford & Moses Digest of the Statutes of Arkansas, § 8984; Act No. 62 of Acts of 1927, pp. 175, 176. A rural special school district is not authorized to borrow money for building purposes unless "authorized by a vote of a majority of the electors of the district at any annual election. Such vote may be 'For Building Fund,' or 'Against Building Fund,' and shall state the amount of the Building Fund Tax which the voter desires levied." Act No. 169 of 1911, p. 144, and amendments. But in a special district no vote of authority is required to issue bonds. Again, rural special school districts may include only territory outside of incorporated towns and cities, C. & M. Digest, § 8831, while special school districts include such towns or cities.

When organized in 1916, the appellant district included within its boundaries 23,000 acres of agricultural land and the village of Tyronza. The village became an incorporated town on May 16, 1926. Thereupon, the district assumed the name "Tyronza Special School District of Poinsett County, Arkansas," and thereafter carried on its affairs under that name and title instead of under the name rural special school district No. 3. But there is no record that any change of corporate status was ever formally effected.

On September 30, 1926, the district issued and sold building fund bonds in the amount of $16,500 secured by a trust deed pledging its property and resources for their payment. On December 1, 1928, the district issued and sold $41,500 additional bonds secured by a similar trust deed. The American Southern Trust Company was named trustee in each trust deed. In all respects material to this case the form of the bonds and the provisions of the trust deeds are identical except as to dates and amounts.

Some time prior to May 25, 1931, the American Southern Trust Company became insolvent and a receiver appointed by the state court was put in control of its affairs. After that occurred, it was not competent to act as trustee under the trust deeds executed by the school district to secure its bond issues. Pouncey v. Fidelity National Bank, 8 Cir., 85 F.2d 486.

At the request of the trust company's receiver the chancery court of Pulaski county, Ark., on May 25, 1931, appointed John Collins "as trustee in succession in all cases in which the American Southern Trust Company is named as trustee."

In September, 1932, Collins as trustee brought suit in the chancery court of Poinsett county, Ark., against the school district and the county treasurer to recover delinquent interest on the $41,500 bond issue of 1928. He asked for a temporary injunction restraining the district and the treasurer from paying out the funds of the district and an order requiring them to set

its moneys aside in a separate account and apply them to the payment of interest and the indebtedness of the district as it became due upon the bonds. The holder of three warrants of the district for $500 each and a resident taxpayer intervened in opposition to the complaint of Collins, and the district answered. The interveners and the defendant asked that not only the 1928 bond issue and trust deed be declared invalid and void, but that the 1926 and other issues also be held invalid and canceled. The attorneys representing Collins in the chancery court withdrew their appearance, and a decree was entered on May 6, 1935, by the terms of which the complaint of Collins was dismissed, both bond issues involved in this suit including the bonds, interest coupons, and trust deeds were adjudged null and void, and it was declared that "they are hereby canceled, set aside and held for naught. * * *"

The trust deeds securing both the 1926 and the 1928 bond issues provide that in case of the inability of the trustee therein named to act "the holder or holders of a majority of the bonds hereby secured" may name a new trustee, "who shall have all the power and authority of the Trustee herein named." Acting under this authority on May 15, 1934, the Equitable Reserve Association of Neenah, Wis., as owner of $13,000 par value of the 1926 bond issue, named Paul D. Speer of Chicago, Ill., one of the appellees, trustee of that issue instead of the American Southern Trust Company.

On August 4, 1934, Speer, trustee, began the present suit in the district court to recover interest and principal of the $16,-500 bond issue of 1926. He named as defendants Tyronza Special School District, "sometimes called Rural Special School District No. 3," and the collector and treasurer of Poinsett county. The complaint alleged the issue of the bonds, payment therefor, execution and delivery of the trust deed, and default in payment of interest due on and after March 1, 1932, and it declared the principal due under the acceleration provision of the bonds. The complaint also pleaded estoppel of the district to deny the validity of the bonds or the authority of the district or its officers to issue them, and prayed that the collector and treasurer be restrained from paying out any funds of the district upon warrants of the district except upon order of the court, that plaintiff be awarded judgment for the full amount of the bonds with interest and costs, and that the trust deed be foreclosed. By amendment plaintiff subsequently asked that in the event the bonds should be held void, he be given judgment for money had and received.

Thereafter the Aid Association for Lutherans, a corporation, of Appleton, Wis., and Vance M. Thompson and I. N. Arnof jointly filed a petition of intervention on their own behalf, in which it was alleged that the Aid Association was the owner of $5,000 and Thompson and Arnof of $20,000 in bonds of the 1928 issue secured by trust deed. The other allegations of the petition of intervention and the prayer for relief were substantially the same as in the complaint of appellee Speer. No objection was made to the filing of the petition of intervention by motion or otherwise.

The appellants moved to dismiss the bill of complaint on the ground that the court was without jurisdiction for the reason that the state chancery court of Poinsett county had first acquired jurisdiction of the parties and of the subject-matter in the suit brought by Collins in 1932 and which resulted in a decree on May 6, 1935, declaring both the bonds and the trust deeds null and void. The motion was overruled and the defendants answered adopting as a part of their answers the allegations of the motion, admitting the execution and delivery of the bonds and trust deeds, default in payment, and the legal existence of the district as a rural special school district, and further alleging that the bonds were in fact null and void because "there was no election called or held as required by the statutes of Arkansas to authorize the execution and delivery of said bonds."

The case was fully tried and the court, after making findings of fact and conclusions of law, entered a decree adjudging the bonds and trust deeds to be valid obligations of the district and awarding judgment for the full amount of the 1926 issue in favor of Speer and for $25,000 of the 1928 issue and interest in favor of the interveners, and for costs. It was further decreed that the district, the collector, and the treasurer set aside nine-eighteenths of all taxes collected in the district in a building fund for the payment of the amounts due and to become due on the bonds, and that such fund be paid out only on the order of the court. Foreclosure sale of the real property of the district was deferred, and jurisdiction was retained for such or-

ders as might be necessary to effectuate the carrying out of the decree and the discharge of the judgments.

The two principal issues for determination on this appeal result from the contentions of appellants (1) that the district court should have sustained the motion to dismiss because of the prior suit in the state chancery court, and (2) that the bonds were invalid and unenforceable because there was no election authorizing their issue. The trial court made no findings of fact nor declarations of law upon the question of estoppel or for money had and received, but based the decree squarely upon the validity of the bonds.

■ With respect to the first issue, appellants contend that the suit brought by Collins in the state chancery court was in rem; and that since the state court took possession of the res prior to the commencement of the suit, the federal court is precluded from exercising its jurisdiction over the same res. Reliance is placed upon Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A. L.R. 1077, and similar cases. This argument cannot be sustained for the reason that we cannot find that the state court was then exercising its jurisdiction over any res. Even if it could be said that the suit commenced by Collins was in rem, the decree entered therein on May 6, 1935, dismissed that proceeding without retaining jurisdiction over any property.

Appellants also contend that the decree of the state chancery court adjudging the bonds void is binding upon the parties to this suit. Appellees on the other hand say their interests were not litigated in the state court because no notice of that suit was served upon the bondholders either by the school district or the interveners, and because they were not represented there.

The dispute at this point turns upon two questions: (1). Did Collins, who was appointed by the state court to succeed the American Southern Trust Company as trustee in the deeds of trust, have authority to represent the bondholders, merely by virtue of such appointment and without their consent, in a suit upon the bonds? And (2) if not, did the bondholders take such substantive steps in the proceedings in the state court that they are bound by the decree in that case? Unless one of these questions must be answered in the affirmative, the requirements of due process of law are not satisfied and the judgment of the state court is not binding upon the bondholders.

■ For the extent of the authority of Collins to represent the bondholders for whom the present suit was brought, we must look to the deeds of trust which clothed the original trustee with authority, and to the court order substituting Collins as trustee instead of the American Southern Trust Company. Kerrison v. Stewart, 93 U.S. 155, 161, 23 L.Ed. 843; Brach v. Moen, 8 Cir., 4 F.2d 786, 791; Mercantile Trust Co. v. Schlafly, 8 Cir., 299 F. 202, 204. The only provisions in the trust deeds conferring power on the trustee, other than the power to hold the legal title to the mortgaged property, to provide insurance and to sell the property in case of default, and to execute a conveyance in case of sale, are these:

"It is further expressly agreed that in the event that any of said bonds fall due and are not paid, then the said Trustee, *upon the consent of a majority of the bondholders,* shall have the right to bring appropriate proceedings to compel the levy and collection of taxes for the payment of said bonds, and to secure the income of said school district, for the purpose of liquidating and paying said bonds and interest coupons, as and when they may fall due. * * *"

"If after thirty days, any installment of principal or interest shall be in default, or if the grantor allows any charge or special assessment to be and remain overdue and unpaid for thirty days, or if it fails after thirty days to maintain the insurance, said Trustee shall *at the request of the holder or holders of a majority of the bonds* hereby secured, and without notice to the grantor, declare all of said debt to be immediately due and payable. * * *" (Italics supplied.)

The order of the state chancery court appointing Collins successor trustee contained only the following grant of power:

"* * * The said John Collins be and he is hereby authorized and empowered, upon his receiving the proper fees for satisfaction, when the debt is fully paid, to make quitclaim deed transferring all the right, title and interest of the American Southern Trust Company to any person designated by the beneficiary in the deed made to the American Southern Trust Company, Trustee, or as Trustee, in all cases in which the American Southern Trust Company, or its predecessor is des-

ignated as trustee, and to make satisfactions of deeds of trust, declarations of trust and mortgages, either by endorsements on the record or by power of attorney, when the proper fees for satisfaction are tendered to him, including the costs of the petition herein and this order."

■■ It thus appears that the authority of the original trustee under the deeds of trust to bring suit upon the bonds was conditioned upon his first obtaining the consent of a majority of the bondholders; and the order appointing Collins successor trustee gave him no power to bring suit whatever. There is no evidence that any of the bondholders consented to his bringing suit. We conclude, therefore, that Collins was without authority to represent the bondholders in the suit in the state court to cancel the bonds. Pouncey v. Fidelity National Bank, supra. This being true, it follows that the judgment of the Poinsett chancery court canceling the bonds was void as against the bondholders, even if it be regarded as a judgment in rem, since they were not served with notice of the suit. Hassall v. Wilcox, 130 U.S. 493, 504,. 9 S. Ct. 590, 32 L.Ed. 1001; Earle v. McVeigh, 91 U.S. 503, 23 L.Ed. 398.

Appellants also contend that appellees are bound by the proceedings and decree of the state court because through their attorney they took "substantive steps" therein. This contention is based upon certain letters written by Mr. Townsend, attorney for the appellees, to the state chancellor and to counsel for appellants, who then represented some of the parties to that suit, requesting a continuance in the state court proceedings. We have read all the correspondence in the record, and it clearly does not constitute an appearance in the state court, and no claim is made that either court or counsel were misled or deceived by it.

Having concluded that the motion to dismiss was properly overruled, we next turn to the question of whether or not the district court erred in holding that the bonds were valid and enforceable.

The gist of appellants' contention is that the bonds are null and void because there was no election, as required by the statutes of Arkansas, at which "a majority of the. electors of the district at any annual election" authorized their issue. There is no contention that the school district did not legally exist or that the boards of directors and officers having a part to perform in the issue of the bonds were not duly elected and properly qualified. Further, no advantage is sought to be taken of the fact that the bonds were issued and the trust deeds executed in the name of Tyronza Special School District instead of in the name of rural special school district No. 3.

■ In pleading the invalidity of the bonds as an affirmative defense, appellants took upon themselves the burden of proving the allegation of their answer "that there was no election called or held as required by the statutes of Arkansas to authorize the execution and delivery of said bonds." Rollins v. Board of Commissioners, 8 Cir., 90 F. 575; Board of Commissioners of Kearny County v. Irvine, 8 Cir., 126 F. 689; Tyler v. Shelby County, 5 Cir., 47 F.2d 103, 105; Board of Commissioners of Lake County v. Keene Five Cents Sav. Bank, 8 Cir., 108 F. 505, 515.

Recognizing the burden thus cast upon them, the appellants at the conclusion of the testimony requested the court to find as a fact, "That said bonds were executed and delivered without the formality of an election authorizing their issuance and delivery, as required by the statutes made and provided in such cases"; and they asked the court to declare as a matter of law that "because no election was held * * * said bonds are void and the deeds of trust on the real property described therein make a cloud upon the title of said property and that the same' be removed by appropriate decree of this court."

Ruling upon these requests, the court ordered that, "The request of the defendants herein, made individually and collectively, * * * for findings of fact and conclusions of law * * * is hereby denied."

The court then found and decreed that both bond issues "were duly and legally issued by said defendant school district, and constitute the valid and binding obligations of said defendant school district, for which it received due value"; and that both trust deeds constitute valid and binding liens on the property and a binding pledge of the property and resources of the district pledged therein for the payment of the bonds and interest.

These rulings and orders of the trial court are assigned as error; and the only questions for our determination is whether the evidence supports the findings of fact and whether the court made a mis-

take in the application of the law. In substance and effect, the conclusion of the court was that the defendants did not sustain the burden of proof on their affirmative defense.

■ It is a settled rule that the findings of a chancellor based upon conflicting evidence are presumptively correct and will not be disturbed on appeal, unless an error has occurred in the application of the law or the finding is clearly against the weight of the evidence. Ditto v. Dufur, 8 Cir., 88 F.2d 266, 269; Central States Life Ins. Co. v. Koplar Co., 8 Cir., 85 F.2d 181, 184; Arkansas Natural Gas Corporation v. Pierson, 8 Cir., 84 F.2d 468, 470; Stearns v. Central Petroleum Co., 10 Cir., 93 F.2d 638, 641; Stewart v. American Life Ins. Co., 10 Cir., 89 F.2d 743; Borden's Farm Products Co. v. Ten Eyck, 297 U.S. 251, 261, 56 S.Ct. 453, 80 L.Ed. 669.

■ In the present case the evidence with respect to an election is in conflict, and we are not able to say that the findings and decree of the chancellor are wrong. It was stipulated that there are no records of any elections in the Tyronza School District prior to 1931. Copies of the bonds, of the trust deeds, and of the proceedings of the board of directors of the school district were introduced in evidence without objection. The court's findings are based upon the recitations in these instruments. The board declared by resolution in connection with the 1926 issue that "a building fund has been voted and provided, as required by law"; and in the bond it is recited that:

"The Tyronza Special School District, Poinsett County, Arkansas, hereby covenants that said School District is duly and legally existing as a School District, under the Constitution and laws of the State of Arkansas; that a building fund tax has been duly voted against the real property within said District, for the purposes required by law; that all acts, conditions and things required by law; that all acts, conditions and things required to be done, precedent to and in the issuing of this bond including the organization of said School District and the Board of Directors, and all such things have been done by said Board, and said District, and have happened and have been performed in regular and due form, as required by law."

And in the 1928 bonds it is stated that "* * * this and all of said bonds are issued under the authority of the Acts of the General Assembly of the State of Arkansas embodied in Section 8977 and 8984 of Crawford and Moses' Digest of the Statutes of Arkansas, as amended, and especially as amended by Act 252 of the General Assembly of Arkansas of 1925, said laws of Arkansas authorizing special school districts to borrow money for acquiring lands for buildings and for building purposes, and for constructing, erecting, improving, equipping and furnishing said buildings, and to refund indebtedness existing prior to March 1, 1927, and to mortgage the property, income and resources of said School District to secure the payment of said bonds and interest.

"The said Special School District of Tyronza hereby represents and warrants that all acts, conditions and things required to be done precedent to and in the issuance of this bond, and in the execution of the said mortgage and deed of trust, have been done, happened and been performed in due time, manner and form as required by the laws and Constitution of the State of Arkansas, and that the total indebtedness of said School District does not exceed any constitutional or statutory limitation."

To sustain their burden of proof that no election authorizing the bonds was held, to overcome the recitations in the bonds, and as a substitute for the absence of the election records the appellants introduced without objection the testimony of five taxpayers resident in the district. None of them had been members of the board of directors of the district at the time the bonds were issued. They all testified that they did not remember that any election had been held, and that in fact there had been no election authorizing the issue of the bonds and the execution of the trust deeds.

The refusal of the lower court to find upon this record that appellants had sustained the burden of proof must be affirmed. We cannot say that the court erred in holding that the testimony of interested taxpayers, relying only upon their memories, should be accorded greater weight than the resolutions of the board of directors and the solemn covenants of the bonds issued by them. These recitations and covenants are of great weight; and when there are no books and records, as in the present case, this court has held that bona fide purchasers are entitled to rely upon such recitals. Board of Commissioners of Lake County v. Sutliff, 8 Cir., 97 F. 270, 278.

One further assignment of error requires consideration. Appellants contend that "The court erred in declaring that intervenors * * * own a majority of the bonds. * · * * "

It is argued that appellee Speer brought this suit as representative of a majority of the bondholders; that two bond issues are involved, that of 1926 for $16,500 and that of 1928 for $41,500, making a total of $58,000; and that ownership of only $18,500 of both issues·was proven at the trial. Clearly this sum was less than a majority of the amount of both issues. For this reason it is now claimed the suit should have been dismissed.

The contention is without merit for two reasons. In the first place, it·is not claimed that the court lost jurisdiction on this account and the question was not raised in the lower court. But the obvious defect in the argument is that Speer was not trustee for the 1928 bond issue, and he did not bring suit for nor claim to represent the holders of the bonds of that issue. He was named trustee for the 1926 issue by the hólder of a majority of the bonds of that issue ownership of which was proven at the trial.

The complaint here can refer only, therefore, to the 1928 issue of $41,500. The interveners were interested in that issue only and not in the 1926 issue. They were not represented by Speer nor any trustee. They brought suit in their own names alleging ownership of bonds of the par value of $25,000. The suit brought by Speer and the suit brought by the interveners were in fact two different suits upon wholly different causes of action. They were tried together without objection and terminated in a single decree, but separate judgments were rendered, one in favor of Speer, trustee, for the entire 1926 issue of $16,500 and interest; one in favor of intervener Aid Association for Lutherans for $5,000 and interest; and one in favor of interveners Thompson and Arnof for $20,000 and interest. Since the interveners sued in their own names, and only upon the bonds held by them, it is immaterial whether they owned a majority of the 1928 issue or not. They did not come into court as the representatives of a class, and were not so treated.

The argument goes a step further, however. The appellants contend that the allegation of interveners Thompson and Arnof that they owned $20,000 of the 1928 issue, although denied, was not established by any proof. Under the pleadings, this was not necessary. The answer to the petition of intervention consisted of a general denial and affirmative defenses, namely, that all the bondholders were represented·in the suit in the state court and that the bonds were invalid by reason of the want of an election authorizing their issue. The affirmative defenses have already been discussed supra. The contention that a general denial in an equity suit raises an issue calling for proof, except in case of the incompetency of the defendant, is without merit. Equity Rule 30, 28 U.S. C.A. following section 723, provides: "The defendant by his answer shall set out in short and simple terms his defense to *each* claim asserted in the bill, omitting mere statements .of evidence and *avoiding general denials*. * * * Averments other than those of value or amount of damage, when not denied, shall be deemed confessed." (Italics supplied.)

This rule abolishes the plea of a general denial. Hass v. United States, 8 Cir., 17 F.2d 894, 895. Under the rule, proof of an allegation in the bill is not required, unless it is specifically denied. In the absence of such denial, the district court was justified in finding ownership, because under the general denial, ownership of the bonds having been specifically alleged, such ownership must "be deemed confessed." Princess Amusement Co. v. Wells, 6 Cir., 271 F. 226, certiorari denied 256 U.S. 701, 41 S.Ct. 623, 65 L.Ed. 1178; Montgomery v. Pacific Electric Co., 9 Cir., 293 F. 680, certiorari denied 264 U.S. 586, 44 S.Ct. 334, 68 L.Ed. 862.

We have carefully examined the entire record and find no error. The decree of the district court is, therefore, affirmed.